# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **TIMOTHY WOODS AND** ) | |
| **KIMBERLY GIBSON,** ) | |
| **On Behalf of Themselves and All** ) | |
| **Others Similarly Situated,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **Case No: 4:14-CV-583-SRB** |
| **v.** ) | |
| ) | |
| **CAREMARK PHC, L.L.C.,** ) | |
| **CAREMARK, L.L.C., and** ) | |
| **CVS PHARMACY, INC.[1]** ) | |
| ) | |
| **Defendants.** ) | |

---

## PLAINTIFFS' UNOPPOSED MOTION FOR <u>PRELIMINARY SETTLEMENT APPROVAL</u>

Respectfully submitted,

**WILLIAMS DIRKS DAMERON LLC**

<u>/s/ Eric L. Dirks</u>
Eric L. Dirks   MO Bar No. 54921
1100 Main Street, Suite 2600
Kansas City, MO  64105
(o) 816-945-7110
(f) 816-945-7118
dirks@williamsdirks.com

**THE HODGSON LAW FIRM, LLC**
Michael Hodgson   MO Bar No. 63677
3609 SW Pryor Road
Lee's Summit, MO 64082
(o) 816-600-0117
(f) 816-600-0137
mike@thehodgsonlawfirm.com

*Additional Counsel Listed on Signature Page*

*Attorneys for Plaintiffs*

---

[1] The parties to this lawsuit have agreed to substitute the corporate entity CVS Pharmacy, Inc. for the currently named CVS Health Corporation and re-caption the lawsuit accordingly. The Third Amended Complaint to be filed pursuant to the terms of this Agreement shall reflect this change.

i

# TABLE OF CONTENTS

I.   **PROCEDURAL HISTORY AND SETTLEMENT OVERVIEW** ..................................... 1

II.  **QUESTION PRESENTED** ........................................................................... 4

III. **ARGUMENT** ................................................................................................ 4

   A.  Approval of the Rule 23 Class Settlement. ............................................... 4

     *i.*   *The Proposed Settlement Enjoys an Initial Presumption of Fairness* ........................... 5

     *ii.*  *The Rule 23(e) Factors Favor Approval of the Settlement.* ........................................... 6

       1.   The class representatives and class counsel have adequately represented the class. ... 7

       2.   The proposal was negotiated at arm's length. ............................................................. 8

       3.   The relief provided for the class is adequate taking into account:(i) the costs, risks, and delay of trial and appeal;(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;(iii) the terms of any proposed award of attorney's fees, including timing of payment. ........................... 9

         a.   The costs, risks, and delay of trial and appeal. ........................................................ 9

         b.   The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims. ........................................... 10

         c.   The terms of any proposed award of attorney's fees, including timing of payment. ……………………………………………………………………………………………11

         d.   Any agreement required to be identified under Rule 23(e)(3). ............................... 16

       4.   The proposal treats class members equitably relative to each other. ......................... 16

       5.   The Experience and Views of Counsel ...................................................................... 17

     *iii.*  *Class Certification is Appropriate.* .............................................................................. 17

Case 4:14-cv-00583-SRB   Document 261   Filed 05/30/19   Page 2 of 37

1. Plaintiffs' Claims Satisfy Rule 23(a). ............................................................ 19

    a. The Class Satisfies Numerosity. ............................................... 19

    b. Common Issues of Law or Fact Will Govern the Litigation. ................................ 19

    c. Plaintiffs' Claims are Typical of the Claims of the Other Members of the Class. . 20

    d. Plaintiffs and Their Counsel Will Adequately Represent the Class. ..................... 20

2. The Class Satisfies the Requirements of Rule 23(b)(3). ........................................... 21

    a. Questions of Law or Fact Common to All Class Members Predominate.............. 21

    b. Class Treatment is the Superior Method for Adjudicating These Claims. ............ 23

    iv. *The Requested Service Awards are reasonable.* .......................................... 24

**IV. APPROVAL OF THE FLSA COLLECTIVE ACTION SETTLEMENT.** ................ **26**

**V. THE COURT SHOULD ENJOIN OTHER SUITS PRIOR TO FINAL APPROVAL 28**

**CONCLUSION** ..................................................................................................... **28**

# TABLE OF AUTHORITIES

**Cases**

*Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525 (8th Cir. 1996) ..................................... 20

*Amchem Prods., Inc.v. Windsor*, 521 U.S. 591 (1997) ........................................... 18, 21

*Amgen, Inc. v. Comm. Retirement Plans & Trust Funds*, 568 U.S. 455 (2013) ..................... 21, 22

*Barfield v. Sho-Me Power Elec. Co-op.*, No. 11-CV-04321-NKL, 2013 WL 3872181 (W.D. Mo.

 July 25, 2013) ........................................................................................ 23

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015) ..................................... 25

*Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-cv-01413, 2008 WL 5458986 (S.D. Cal. Dec. 10, 2008)

 ........................................................................................................ 6

*Blades v. Monsanto Co.*, 400 F.3d 562 (8th Cir. 2005) ................................................. 22

*Boeing Co. v. VanGemert*, 444 U.S. 472, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980)..................... 12

*City of Greenville v. Syngenta Crop Protection, Inc.*, 904 F. Supp. 2d 902 (S.D. Ill. 2012) ....... 13

*Cohn v. Nelson*, 375 F. Supp. 2d 844 (E.D. Mo. 2005) ................................................. 5

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ........................................................ 18

*Cope v. Let's Eat Out, Inc.*, 319 F.R.D. 544 (W.D. Mo. 2017) .................................... 20, 23

*Cromeans v. Morgan Keegan & Co.*, 303 F.R.D. 543 (W.D. Mo. 2014).............................. 19, 20

*Day v. Celadon Trucking Servs., Inc.*, 827 F. 3d 817 (8th Cir. 2016) ........................................ 22

*DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171 (8th Cir. 1995) ........................................ 20

*Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998)....................................................... 13

*Hale v. Wal-Mart Stores, Inc.*, Nos. 01CV218710, 02CV227674, 2009 WL 2206963 (Mo. Cir.

 Ct. Jackson Cty. May 15, 2009) ........................................................................ 16

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ........................................................... 11

Case 4:14-cv-00583-SRB   Document 261   Filed 05/30/19   Page 4 of 37

*In re Austrian & German Bank Holocaust Litig.*, 80 F.Supp.2d 164 (S.D.N.Y. 2000) ................. 6

*In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694 (E.D. Mo. 2002) ............................... 17, 27

*In re Diet Drugs*, 282 F.3d 220 (3d Cir. 2002) ........................................................................ 28

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768 (3d Cir.

    1995) ........................................................................................................................................... 5

*In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151 (S.D.N.Y. 2011) ......................... 15

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3rd Cir. 1998) 12

*In re Synthroid Marketing Litigation*, 264 F.3d 712 (7th Cir. 2001) ........................................... 13

*In re U.S. Bancorp Litig.*, 291 F.3d 1035 (8th Cir. 2002) ...................................................... 12, 14

*In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057 (8th Cir.

    2013) .......................................................................................................................................... 6

*In re Xcel Energy, Inc. Sec. Derivative & ERISA Litig.*, 364 F.Supp.2d 980 (D. Minn. 2005)

    .......................................................................................................................... ….12, 14

*Johnston v. Comerica Mortg. Corp*, 83 F.3d 241 (8th Cir. 1996) ............................................... 12

*Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir. 1986) ....................................................................... 13

*Liles v. Del Campo*, 350 F.3d 742 (8th Cir. 2003) ...................................................................... 5

*Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371 (8th Cir. 1990) ..

    ........................................................................................................................................ 5, 27

*Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350 (11th Cir. 1982) ......................................... 26, 27

*Malchman v. Davis*, 706 F.2d 426 (2d Cir. 1983) ....................................................................... 8

*Marcus v. Kansas*, 209 F. Supp. 2d 1179 (D. Kan. 2002) ........................................................... 8

*Marshall v. Nat'l Football League*, 787 F.3d 502 (8th Cir. 2015) ................................................ 6

*Matheson v. T-Bone Rest.*, LLC, 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011) ......................... 25

v

*Mentor v. Imperial Parking Sys., Inc.*, 2010 WL 5129068 (S.D.N.Y. Dec. 15, 2010)................ 25

*Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015).................................... 23

*Parko v. Shell Oil Co.*, 739 F.3d 1083 (7th Cir. 2014) ............................................ 22

*Paxton v. Union Nat. Bank*, 688 F.2d 552 (8th Cir. 1982) ........................................ 21

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) ..................................... 5, 12

*Rosenbaum v. MacAllister*, 64 F.3d 1439 (10th Cir. 1995) ........................................ 12

*Sanderson v. Unilever Supply Chain, Inc,* 10-CV-00775-FJG, 2011 WL 5822413 (W.D. Mo.

     Nov. 16, 2011)................................................................................... 6, 7, 17

*Schoenbaum v. E.I. Dupont De Nemours & Co.*, 4:05-CV-01108, 2009 WL 4782082 (E.D. Mo.

     Dec. 8, 2009) ...................................................................................... 5

*Sutton v. Bernard*, 504 F.3d 688 (7th Cir. 2007) ................................................. 13

*Swedish Hospital Corp v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993)................................. 12

*Tussey v. ABB, Inc.*, No. 06-04305-CV-C-NKL, 2012 WL 5386033 (W.D. Mo. Nov. 2, 2012). 25

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) ........................................ 22

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ............................................ 19

*Warner Comm. Sec. Lit.*, 618 F. Supp. 735 (S.D.N.Y. 1985) ....................................... 6

*Williams v. Rohm and Hass Pension Plan*, 658 F.3d 629 (7th Cir. 2011)........................... 13

*Willix v. Healthfirst, Inc.*, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)........................... 25

*Winkler v. Eli Lilly & Co.*, 101 F.3d 1196 (7th Cir. 1996) ...................................... 28

*Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057 (D. Minn. 2010)........................ 14

**Statutes**

28 U.S.C. § 1651(a) .............................................................................. 28

29 U.S.C. § 216(b) ....................................................................................................... 2

**Rules**

Fed. R. Civ. P. 23(b)(3)........................................................................... 18, 21, 22, 23

Rule 23 ................................................................................................................... 19

Rule 23(a)............................................................................................................... 19

Rule 23(a)(2) .......................................................................................................... 19

Rule 23(a)(3)........................................................................................................... 20

Rule 23(a)(4)....................................................................................................... 20, 21

**Other Authorities**

2 Joseph M. McLaughlin, McLaughlin on Class Actions, § 6:24 (8th ed. 2011) ................. 16

4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.25, at 38-39 (4th ed. 2002).. 4

The parties have reached an agreement to settle this case. The settlement is fair, reasonable and beneficial to the class members and should be readily approved. The settlement creates a common fund of $15,250,000 covering approximately 17,700 class members who worked for Defendants as non-exempt telephone dedicated customer service representatives. The settlement addresses the alleged unpaid time that workers spent, among other things, booting up their computers and loading computer applications prior to clocking in on their phones. The settlement results in a projected average gross recovery of nearly $1,000 per class member with individuals who worked the entire class period to receive more than several times that average.

Each class member will be sent notice that identifies his or her specific net recovery (free and clear of fees and costs) so that all putative class members will be given the choice to participate or not to participate, including the right to preserve any individual claims or rights they may have against Defendants.

This settlement is imminently fair, adequate and reasonable and it should be readily approved.

## I.     Procedural History and Settlement Overview

Named Plaintiff Timothy Woods ("Plaintiff") brought this lawsuit on July 1, 2014. Plaintiff sought relief on behalf of a nationwide collective for unpaid wages pursuant to the Fair Labor Standards Act ("FLSA") and on behalf of a Missouri class for unpaid wages under Missouri state law. Shortly after the case was filed, Defendants issued an offer of judgement to Plaintiff which he rejected. Because the law at the time was unclear as to whether an offer of judgment would moot the entire class action, Plaintiff amended the Complaint adding an additional class representative, Kimberly Gibson, and moved to conditionally certify the FLSA collective. *See* Docs. 19, 20. After some threshold discovery and full briefing, the Court conditionally certified

1

the FLSA collective with respect to Call Center Workers who worked at CVS' facility in Lee's Summit, Missouri. Doc. 43. Pursuant to the Court's conditional certification order, notice and an opportunity to opt-in was sent pursuant to 29 U.S.C. § 216(b), and numerous individuals opted into the case. The parties continued discovery, primarily focused on nationwide certification issues, and had several discovery disputes which were presented to the Court.

Following an extended period of nationwide discovery, Plaintiffs moved for nationwide FLSA conditional certification (Doc. 83) and that motion was denied without prejudice. Doc. 93. The motion for nationwide FLSA conditional certification was briefed again and the Court ultimately granted the motion. Doc. 141. In the meantime, the parties briefed a motion to amend the complaint to add additional state law claims and Defendants' motion to compel arbitration. The motion to amend was granted and the motion to compel was denied. Docs. 139, 140. The parties continued discovery focusing on the merits of the case and on Rule 23 certification. During this process the parties presented numerous discovery disputes to the court and set a trial date for November 2019.

Through the course of discovery, the parties exchanged several rounds of written discovery, numerous documents, ESI, payroll data and conducted a large number of depositions of Defendants' witnesses and class members.

Shortly before the deadlines to brief FLSA decertification and Rule 23 certification, the parties agreed to mediate the case before Hunter Hughes, a nationally recognized class action and wage and hour mediator. The parties attended mediation on December 21, 2018 but did not resolve the case. The parties continued their settlement efforts with the assistance of Mr. Hughes and reached a settlement in principle on February 28, 2019. The parties finalized a written settlement agreement on May 29, 2019.

2

The Plaintiffs and class counsel believe the claims asserted have merit and that the evidence developed to date supports the claims asserted. Plaintiffs and counsel, however, also recognize the risk and delay of further proceedings in a complex case like this, and believe that the Settlement confers substantial benefits upon the class members. Defendants deny Plaintiffs' claims in their entirety and deny any wrongdoing, but wish to avoid the uncertainty and risk attendant with further litigation.

The main terms of the agreement are as follows:

- The settlement creates a common fund of $15,250,000 to resolve the claims of approximately 17,700 class members;

- Payments will be based on each class member's actual weeks worked within the applicable statute of limitation and his or her gross pay during eligible workweeks;

- Separate notices will be provided to existing opt-in plaintiffs informing them of the approximate amount of their settlement payment free and clear of attorneys' fees, lawsuit costs, and administrative costs and their right to opt out or object to the settlement if they so choose. Existing FLSA class members will receive their allocated amount unless they choose to exclude themselves from the settlement;

- Individuals who have not yet opted into the case will receive notice informing them the approximate amount of their settlement payment free and clear of attorneys' fees, lawsuit costs, and administrative costs and their right to participate in the settlement, opt out, or object to the settlement if they so choose;

- The notice will be mailed, and emailed (where possible). There will be a reminder notice sent to individuals who have not opted in within thirty days of the original notice. The notice is formatted based on the Federal Judicial Center notice and other notices approved by this Court. Claims may be submitted via mail or submitted online with the Claims Administrator;

- CAFA notice will be sent to state and federal authorities providing them a right to object to the settlement;

- A final fairness hearing allowing class members to present any objections will be held on a date scheduled by the court (approximately 4.5 months after preliminary approval);

- Participating class members will receive a settlement payment (as described above)

3

and in exchange release FLSA and state wage and hour law claims arising out of the facts of this case that were or could have been asserted in this case. Non-participating class members will not receive a settlement payment (as described above), will not release their FLSA claims, and will release their state wage and hour law claims arising out of the facts of this case that were or could have been asserted in this case. To the extent any funds remain after eligible class members have filed claims and received distributions, remaining funds will be returned to CVS;

- Plaintiffs' counsel seeks attorneys' fees in the amount of one-third of the fund;

- Plaintiffs' counsel seeks costs to date of approximately $73,817.53;

- The individual Named Plaintiffs and specific class members (including Settlement Class Representatives) who performed various levels of service to the litigation seek, in recognition to their service contributions, less than 1% of the Settlement Fund, in the following amounts: Named Plaintiff Timothy Woods, $27,500.00; Named Plaintiff Kimberly Gibson; $17,500.00; Class Representatives Marta Hulseberg, Ramon Ogden, Anita Johnson, and Alyssa Viau: $10,000 per person; plaintiffs Marteen Manuel, Alysia Sanders, Anita Richardson, Cynthia Dimond, Jeffrey Marcotte and Susan Siegel, who engaged in discovery: $5,000 per person; Settlement Class Representatives Veronica Brown, Lacy Webster, Kathy O'Connell, Leona Gist, Maria Shelton, Ricardo Garcia and Tanya Cook $1,000 per person.

The settlement agreement is attached as Exhibit 1.

## II. Question Presented

Should the Court grant Plaintiffs' motion to approve the settlement of this case when the settlement is fair, reasonable and provides an immediate, significant benefit to the class members, and ends contested litigation that has been pending for five years prior to trial?

## III. Argument

### A. Approval of the Rule 23 Class Settlement.

Rule 23(e) sets out a two-part process for Rule 23 settlements.[2] This case is at the first stage of the settlement process, often called "preliminary approval" where the Court decides whether it

---

[2] Approval of a Rule 23 class settlement involves a two-step process. Manual for Complex Litigation, § 21.632 (4th ed. 2004); 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.25, at 38-39 (4th ed. 2002); *see also*

4

is likely to approve the settlement such that notice of the settlement should be sent to the class. The newly-amended Rule 23(e)(1) states that in order to send notice of settlement to the class, the Court must first find that the Court will likely:

(1) "approve the proposal under Rule 23(e)(2)"; and

(2) "certify the class for purposes of judgment . . .."

At this first step of the process, the parties request that the Court grant "preliminary approval" of the Rule 23 settlement and order that notice should be sent to the class.

### i. The Proposed Settlement Enjoys an Initial Presumption of Fairness.

"The law strongly favors settlements. Courts should hospitably receive them." *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990) (noting that it is especially true in "a protracted, highly divisive, even bitter litigation"); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."). This preference is particularly strong "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)).

---

*Schoenbaum v. E.I. Dupont De Nemours & Co.*, 4:05-CV-01108, 2009 WL 4782082, at *2 (E.D. Mo. Dec. 8, 2009) ("As a practical matter, evaluation of a settlement usually proceeds in two stages; before scheduling the fairness hearing, the court makes preliminary determinations with respect to the fairness of the settlement terms, approves the means of notice to class members, and sets the date for that final hearing.") (*citing* Manual § 21.632 and *Liles v. Del Campo*, 350 F.3d 742, 745 (8th Cir. 2003)). During the first step, counsel submits the proposed terms of settlement and the Court makes a preliminary fairness evaluation. If the Court is likely to approve the settlement, then it should grant preliminary approval and direct that notice under Rule 23(e) be given to class members of a formal fairness hearing, at which objections may be heard (the second step). *See* Manual § 21.633; Rule 23(E)(1).

5

Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 Newberg on Class Actions§ 11.41; *see also Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) ("A settlement agreement is 'presumptively valid.'") (quoting *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013)). After the parties' arm's length negotiations, "it is not for the Court to substitute its judgment as to a proper settlement for that of such competent counsel." *In re Austrian & German Bank Holocaust Litig.*, 80 F.Supp.2d 164, 173-74 (S.D.N.Y. 2000) (quoting *In re Warner Comm. Sec. Lit.*, 618 F. Supp. 735, 746 (S.D.N.Y. 1985)); *Sanderson v. Unilever Supply Chain, Inc.*, 10-CV-00775-FJG, 2011 WL 5822413, at *3 (W.D. Mo. Nov. 16, 2011) (crediting the judgment of class counsel experienced in FLSA cases that settlement was fair, reasonable, and adequate); *Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-cv-01413, 2008 WL 5458986, *8 (S.D. Cal. Dec. 10, 2008) ("it is the considered judgment of experienced counsel that this settlement is a fair, reasonable, and adequate settlement of the litigation, which should be given great weight.").

### ii. The Rule 23(e) Factors Favor Approval of the Settlement.

In evaluating the fairness of the settlement, the Rule 23(e)(2) factors are:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i)    the costs, risks, and delay of trial and appeal;

    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

6

According to the Advisory Committee notes: "The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." 2018 Advisory Committee Notes.[3] As a result, this motion will follow the factors outlined in Rule 23(e) but will then address miscellaneous factors previously analyzed by this and other courts. Under any standard, however, the settlement is fair, reasonable, and adequate.

### 1. The class representatives and class counsel have adequately represented the class.

The class representatives and class counsel have adequately represented the class since the case was filed in 2014. First, class counsel are highly experienced in the area of wage and hour and class action litigation. They have tried wage and hour class actions to verdict and prosecuted and settled numerous others. Moreover, they have diligently prosecuted this case for nearly five years, handling, among other things, motions to dismiss, offers of judgment, three conditional certification motions, discovery disputes, and depositions. Class counsel also reviewed numerous documents and types of ESI, worked with experts and communicated with hundreds of class members regarding the strengths and weaknesses of the case.

Similarly, the class representatives have done everything asked of them and more. For example, CVS made an offer of judgment early in the case to the Named Plaintiff Timothy Woods. While it would have benefitted him personally to accept the offer, he did not accept it and instead

---

[3] In considering the fairness of both Rule 23 and FLSA class settlements, courts have considered the following factors: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object [final approval stage]; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery." *Sanderson*, 2011 WL 5822413, at *3.

continued to serve the class over his personal interests. Moreover he (and others) sat for depositions, provided written discovery to CVS and attended both mediations.

### 2. The proposal was negotiated at arm's length.

The settlement was fairly and honestly negotiated. "The fairness of the negotiating process is to be examined 'in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves.'" *Ashley v. Reg'l Transp. Dist.*, Civil No. 05-cdv-01567- WYD-BNB, 2008 U.S. Dist. LEXIS 13069, at *15 (D. Colo. Feb. 11, 2008) (unpublished) (quoting *Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir. 1983)). The settlement was honestly and fairly negotiated by competent counsel and involved the assistance of two well-respected mediators. "When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable." *Marcus v. Kansas*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002).

As the Court is well aware, the case was highly contested. Five years of litigation proves this point. Defendants disagreed with Plaintiffs' legal and factual positions at every step. Not only were the merits contested but so was class certification. Moreover, the first mediation with John Phillips failed near the beginning of the case and it took four more years of litigation and another in-person mediation with Hunter Hughes, as well as significant follow up with Mr. Hughes, to reach an agreement. Under these circumstances it cannot be questioned that the deal was reached at arm's length.

8

3. **The relief provided for the class is adequate taking into account:(i) the costs, risks, and delay of trial and appeal;(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;(iii) the terms of any proposed award of attorney's fees, including timing of payment.**

This settlement provides significant relief to class members that compensates them fairly for their alleged unpaid time and is well within the range of settlements of similar cases.

### a. The costs, risks, and delay of trial and appeal.

The parties naturally dispute the strength of the Plaintiffs' case, and the settlement reflects the parties' compromise of their assessments of the worst-case and best-case scenarios, weighing the likelihood of various potential outcomes. Plaintiffs' best-case scenario is class certification, a denial of FLSA decertification, an adverse inference instruction on damages and recovery on the merits. Plaintiffs' worst-case scenario is that the conditionally certified FLSA collective is decertified, class certification under Rule 23 is denied for the state law claims, summary judgment is granted to Defendants, and/or Plaintiffs lose at trial. Even if this case were to proceed to trial and Plaintiffs prevailed on the question of liability, substantial questions may remain as to the measure of damages and the entitlement of each class member to recover. Although Plaintiffs believe strongly in the merits of their claims, the great number of uncertainties in ultimately calculating class damages makes it difficult to predict how the Court/jury would make an assessment and award.

This case is complex and carries significant risks for the parties as to both legal and factual issues, and litigating the case to trial would likely consume great time and expense. The remaining discovery, summary judgment and decertification briefing, trial and appeal would consume significantly more time and resources. Plaintiffs would likely have brought at least a dozen witnesses from several states for several days of preparation and testimony, at great expense to the

9

parties and inconvenience to the witnesses. Moreover, the parties would bring expensive expert witnesses to trial. And regardless of the outcome, a lengthy appeal would be likely.

On the other hand, the settlement proposed ensures that class members will recover proportionally based on their specific time and pay in a covered job for Defendants. This equitable and certain recovery is highly favorable in light of the many uncertainties still pending in the litigation, and weighs in favor of approving the proposed settlement. In sum, the settlement brings substantial and certain monetary value to class members now, rather than uncertain value to an uncertain number of people at an uncertain time after protracted litigation involving complex and changing law.

### b. The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims.

The settlement calls for different notices to be sent to the class members, depending on their status. One notice to class members who have already opted into the litigation (attached as Exhibit A to the Settlement Agreement), another to class members who worked in California who have already opted into the litigation (attached as Exhibit B to the Settlement Agreement), another to class members who have not yet opted into the litigation (attached as Exhibit C to the Settlement Agreement), and the last to class members who worked in California who have not yet opted into the litigation (attached as Exhibit D to the Settlement Agreement). The notices are essentially the same except that the notice for existing opt in plaintiffs does not provide the opportunity to opt into the settlement because existing plaintiffs are automatically included, and the California notices include specific information regarding the California state law claims being released and the additional consideration being provided for those releases. The notice to class members who have not yet opted in (both nationwide and in California) includes the right to opt in and participate in

the settlement.[4] All notices provide the right to opt out or object. All notices are based on sample notices from the Federal Judicial Center. The notices include all of the information required by Rule 23. Indeed, the notices go above and beyond those requirements and specifically inform class members of their individual estimated settlement amount free and clear of fees and costs.

Further, the parties have agreed that in addition to the mailing of notice, the notice will be emailed to class members for whom a personal email exists. Additionally, a reminder notice will be sent to class members. The claims process is easy to use as well. Individuals wishing to participate may simply visit the claims administrator's website to submit a claim. The notice is easy to read and provides all the necessary information and a claim that is easy to submit.

### c. The terms of any proposed award of attorney's fees, including timing of payment.

The settlement calls for a payment of attorneys' fees constituting one-third of the gross settlement amount plus costs in the amount of approximately $73,817.53. The attorneys' fee award is scheduled to be distributed to plaintiffs' counsel ten days after the final approval of settlement – only after all payments to class members have been determined and any objections have been heard.

The Supreme Court has expressed a preference that the parties agree to the amount of the fee: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Here, the parties have done so. When a settlement yields a common fund for class members, fees must

---

[4] The class has already had one opportunity to join the case after the Court ordered nationwide FLSA certification. Instead of merely leaving the individuals who chose not to join the FLSA case out in the cold, the settlement provides those individuals the opportunity to see the amount they can receive and again choose to join the case.

be paid from the recovery. *Boeing Co. v. VanGemert*, 444 U.S. 472, 481, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980). "In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also 'well-established.'" *In re Xcel Energy, Inc. Sec. Derivative & ERISA Litig.,* 364 F.Supp.2d 980, 991 (D. Minn. 2005). Indeed*,* courts in this Circuit routinely approve and apply the "percentage-of-the-fund" approach in awarding attorneys' fees in common fund cases. *See, e.g., Johnston v. Comerica Mortg. Corp,* 83 F.3d 241, 245-7 (8th Cir. 1996) (approving the percentage method as one method of awarding fees); *Petrovic v. AMOCO Oil Co.,* 200 F.3d 1140, 1157 (8th Cir. 1999); *In re U.S. Bancorp Litig.,* 291 F.3d 1035, 1038 (8th Cir. 2002); *In re Xcel Energy,* 364 F. Supp. 2d at 993.

As courts including the Eighth Circuit have routinely recognized, using a percent of the fund approach most closely aligns the interests of the lawyers with the class, since the more that is recovered for the class, the more the attorneys stand to be paid. *See Johnston v. Comerica Mortgage Co.*, 83 F. 3d 241, 244 (8th Cir. 1996) (noting that the percent of benefit approach has been recommended in common fund situations); *see also Stoneridege Inv. Partners LLC v. Charter Communs., Inc. (In re Charter Communs., Inc.)*, 2005 U.S. Dist. LEXIS 14772, 40-42 (D. Mo. 2005). Moreover, other Circuits express "a preference for the percentage of the fund method" in class actions. *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995); *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3rd Cir. 1998) ("[t]he percentage-of-recovery method is generally favored in cases involving a common fund"); *Swedish Hospital Corp v. Shalala,* 1 F.3d 1261, 1269, 1272 (D.C. Cir. 1993) ("concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fee award in common fund cases" and that "a percentage of the fund approach more accurately reflects the economics of litigation practice … and most closely approximates the manner in which

12

attorneys are compensated in the marketplace for these types of cases.").

Indeed, courts routinely "do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007); *In re Synthroid Marketing Litigation*, 264 F.3d 712, 717-18 (7th Cir. 2001) (*Synthroid I*) (reversing district court's award for failure to apply "market-based approach" to approving attorney's fees). "The object in awarding a reasonable attorney's fee is to give the lawyer what he would have gotten in the way of a fee in arm's length negotiation, had one been feasible. In other words the object is to simulate the market where a direct market determination is infeasible." *Id*. (*citation omitted*). *Synthroid* sets forth a framework for assessing attorneys' fees in common fund cases, observing that the court must "estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)." *Synthroid I*, 264 F.3d at 718. To conduct this evaluation, the court must look to "actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions." *Williams v. Rohm and Hass Pension Plan*, 658 F.3d 629, 635 (7th Cir. 2011) (*citation omitted*). When "the prevailing method of compensating lawyers for similar services is the contingent-fee, then the contingent fee is the 'market' rate." *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986); *see also Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) ("[I]t is commonplace to award the lawyers for the class a percentage of the fund in recognition of the fact that most suits for damages in this country are handled in the plaintiff's side on a contingent fee basis."). Where plaintiffs engaged in litigation have agreed to a contingent fee of one-third of the net recovery, these agreements "define the market." *City of Greenville v. Syngenta Crop Protection, Inc*., 904 F. Supp. 2d 902, 908 (S.D. Ill. 2012). Here, the market rate is not an item of

13

mere conjecture – Class Counsel entered into a contingency agreement with the Named Plaintiff and class representatives for, at a minimum, one-third of the recovery plus costs.

Courts in the Eighth Circuit and in Missouri "have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in class actions." *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1064 (D. Minn. 2010) (*quoting In re U.S. Bancorp Litig.,* 291 F.3d 1035, 1038 (8th Cir.2002) (affirming fee award representing 36% of the settlement fund as reasonable)); *In re Xcel,* 364 F.Supp.2d at 998 (collecting cases demonstrating that district courts routinely approve fee awards between 25% and 36%); *Husein v. Bravo Brio Restaurant Group*, No. 16-cv-00435-DW, Doc. 48 (W.D. Mo. December 13, 2017) (approving one-third of the maximum settlement fund as attorneys' fee in an FLSA class action) (Whipple, J.); *Hernandez v. Texas Capital Bank*, No. 07-0726-ODS, Doc. 107 (W.D. Mo. July 14, 2009) (same) (Smith, J.); *Busler v. Enersys Energy Products Inc.*, No. 09-0159, Docs. 111, 120 (W.D. Mo.) (same) (Gaitain, J.); *Osby v. Citigroup, Inc.*, No. 5:07-06085-NKL, Doc. 128 (W.D. Mo. June 22, 2009) (same) (Laughrey, J.); *Brown v. Time Warner Cable, Inc.*, No. 13-0353-CV-W-BP (W.D. Mo. March 3, 2014) (same) (Phillips, J.); *In re U.S. Bancorp Litigation*, 291 F.3d at 1038 (affirming award of 36% of common fund plus expenses); *Hamilton, et al. v. ATX Services Inc.*, No. 08-0030-SOW (W.D. Mo. May 6, 2008) (order under seal approving attorneys' fees and expenses at 34%); *Burks v. Bi-State Development Agency*, No. 4:09CV1302 (MLM) (E.D. Mo. Jan. 31, 2011) (Doc. 91, p. 3, ¶ 8 & Doc. 102, p. 4, ¶ 9) (approving 33-1/3% attorney's fee award in call center wage and hour claim); *Wolfert v. UnitedHealth Group, Inc.*, No. 4:08CV1643 (TIA) (E.D. Mo. Oct. Aug. 21, 2009) (Doc. 37, p. 2 & Doc. 38, p. 4, ¶ 9) (approving attorney fee award of 33% of the maximum gross settlement amount in call center overtime claim); *Morak, et al. v. CitiMortgage, Inc.*, No. 07-1535 (E.D. Mo. Sep. 26, 2008) (order under seal approving attorneys' fees and expenses at

14

33%); *Staton v. Cavo Communications, Inc.*, No. 08-0273 (E.D. Mo. Jan. 14, 2009) (order under seal approving attorneys' fees and expenses at 33%); *Edney, et. al. v. The Golf Stop*, No. 11-00185-CV-W-DW (W.D. Mo, Nov. 11, 2011) (Whipple, J.) (approving a fee award of 33% of the settlement fund); *Michaels v. Diodes Fabtech*, No. 4:12-cv-01082-GAF (W.D. Mo., January 14, 2013) (Fenner, J.) (same); *See also Robinson v. Flowers Foods, Inc.,* No. 16-02669-JWL (D. Kan. May 31, 2018) (awarding one-third of common fund in FLSA settlement for pre-and post-shift changing time) (Lungstrum, J.); *Wass v. NPC International, Inc.,* No. 02254-JWL, Doc. 359 (D. Kan. June 27, 2012) (Lungstrum, J.) (approving one-third of the common fund in FLSA case); *Perry v. National City Bank*, Order Approving Settlement, Attorneys' Fees and Service Awards, Case No. 3:05-CV-00891-DRH-PMF (S.D. Ill. March 3, 2008) (approving requests for attorneys' fees and costs in the amount of thirty-three percent (33%) of the Settlement Fund in FLSA case).

Class Counsel took this case on a contingency basis, with the real possibility of an unsuccessful outcome and no fee of any kind. When Plaintiff filed his Complaint in 2014, it was with no indication that a settlement would be reached or that litigation would be successful. Class Counsel has continued to litigate the case and front all litigation expenses for five years.

Class Counsel is also seeking approval of approximately $73,817.53 for out-of-pocket expenses. These expenses were all necessary in the pursuit of this litigation and the results obtained. (*See* Itemization of Expenses, filed herewith.) These expenses include filing costs, the costs of taking depositions, expert costs, travel costs, and the cost of two mediations. These costs were reasonable and necessary. It is appropriate and customary in class litigation for class counsel to be reimbursed for out-of-pocket litigation expenses from a common settlement fund. *See In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2011) ("It is well established that counsel who create a common fund are entitled to the reimbursement of expenses

that they advance to a class."); *see also* 2 Joseph M. McLaughlin, MCLAUGHLIN ON CLASS ACTIONS, § 6:24 (8th ed. 2011) (noting that "class counsel also is entitled to reimbursement from the class recovery (without interest) for the costs and reasonable out-of-pocket expenses incurred in prosecuting the litigation"). Reimbursable expenses include costs incurred for legal research, photocopying, document production, deposition transcripts, travel, meals, lodging, postage, and expert witness services. *Hale v. Wal-Mart Stores, Inc.*, Nos. 01CV218710, 02CV227674, 2009 WL 2206963, ¶ 6 (Mo. Cir. Ct. Jackson Cty. May 15, 2009) (Midkiff, J.). Exhibit 2 reflects that the costs for which Class Counsel seeks compensation fall within these acceptable categories.

This settlement provides participating class members with a significant payment, even after accounting for the requested attorneys' fees, reimbursement of out-of-pocket expenses, and the cost of the settlement administrator. All Class Members choosing to participate will be informed in the Notice that Class Counsel will receive one-third of the common fund. If Class Members do not approve of that amount, they can exclude themselves from the settlement and attempt to hire another lawyer to prosecute his or her case at a lower rate.

> **d. Any agreement required to be identified under Rule 23(e)(3).**

No such agreement exists.

> **4. The proposal treats class members equitably relative to each other.**

The settlement treats class members fairly and equitably. No person or group of people are treated more advantageously than another; while the participating class members who worked in California will receive slightly more money than other class members, that is because they are agreeing to a slightly more expansive release, intended to fully resolve claims under California's unique remedial structure. Indeed, the settlement formula takes into account each class member's gross pay and time worked within the applicable statute of limitations. Thus, the longer a class

16

member worked in a class period, then the more he or she will receive. But no class members will receive special treatment, except as specifically explained regarding "Service Awards" to the named plaintiffs and other class members who have participated in the case as class representatives or participated more fully in individualized discovery.

### 5. The Experience and Views of Counsel

A court evaluating a proposed settlement "should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) (quoting Fed. Judicial Ctr., Manual for Complex Litig. § 30.42 at 240 (3d. ed.1997)). Although the Court is not bound by counsel's opinion, their opinion nonetheless carries weight in assessing a settlement. *Sanderson*, 2011 WL 5822413, at *3–4 (crediting experienced class counsel's belief that the settlement was fair, reasonable, and adequate). Here, the class had the benefit of attorneys who are highly experienced in complex wage and hour litigation and familiar with the facts and law in the case, and who have negotiated many such class and collective action settlements. In Counsel's view, the settlement provides substantial benefits to the class, especially when one considers, among other things, the attendant expense, risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings. Further, in Counsels' experience, when compared with similar litigation, the relief to the class is substantial.

### iii. Class Certification is Appropriate.

The second part of Rule 23(e)(1) requires the Court to determine that it is likely to certify the class for settlement purposes. The Advisory Committee comment states:

One key element is class certification. If the court has already certified a class, the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted. But if a class has not been certified, the parties must ensure that the court has a basis for concluding that it likely will be able, after the final hearing, to certify the class. Although the standards for certification differ for settlement and litigation purposes, the court cannot make the decision regarding the prospects for certification without a suitable basis in the record. The ultimate decision to certify the class for purposes of settlement cannot be made until the hearing on final approval of the proposed settlement.

Here, the Court conditionally certified the case as a nationwide FLSA collective but has not yet addressed certification of the state law claims. For the same reasons the Court granted conditional certification of the FLSA collective, the Court should readily certify, for settlement purposes only, the Rule 23 classes.

Rule 23 requires that an action satisfy the four prerequisites of Rule 23(a) and at least one of the provisions of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Under Rule 23(a), the proposed class must satisfy the requirements of numerosity, commonality, typicality, and fair and adequate representation. *See Amchem Prods., Inc.v. Windsor*, 521 U.S. 591, 613-14 (1997). And where, as here, plaintiffs seek certification under Rule 23(b)(3), they must demonstrate that common questions of law or fact predominate over individual issues and that maintaining the suit as a class action is superior to other methods of adjudication. *See* Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615-16.

The claims under state law are based on the same allegations as the FLSA certification – that class members were required to perform preliminary and postliminary work outside of the time they were on the clock. Because the facts and issues underlying the Court's previous FLSA

18

conditional certification are the same as underlying the certification of state wage and hour laws under Rule 23, the Court should readily certify the Rule 23 classes for settlement purposes.

### 1. Plaintiffs' Claims Satisfy Rule 23(a).

#### a. The Class Satisfies Numerosity.

Here, the proposed Class is sufficiently numerous. It includes approximately 17,700 class members and this easily meets the standard.

#### b. Common Issues of Law or Fact Will Govern the Litigation.

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." A plaintiff must show that the claims "'depend upon a common contention' that 'is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Cromeans v. Morgan Keegan & Co.*, 303 F.R.D. 543, 552 (W.D. Mo. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

The settlement class satisfies Rule 23(a)(2)'s commonality requirement. While only one common question of law or fact is required, this case has many, including:

- Whether time spent booting up computers and loading applications is compensable if it occurs prior to or after the scheduled workday;

- Whether CVS had a policy stating that preliminary and postliminary work is noncompensable;

- Whether the amount of time booting up and shutting down computers is *de minimis*, and, therefore, noncompensable;

- The reasonable amount of time that the preliminary and postliminary activities take;

- Whether Defendants' alleged violation was willful; and

- Whether Defendants acted in good faith.

19

Each of the foregoing questions is common to the Class because they apply to all class members.

### c. Plaintiffs' Claims are Typical of the Claims of the Other Members of the Class.

Rule 23(a)(3) requires that the claims or defenses of the representative parties are typical of the claims or defenses of the class. "The burden of demonstrating typicality is fairly easily met, so long as other class members have claims similar to the named plaintiff." *Cope v. Let's Eat Out, Inc.*, 319 F.R.D. 544, 555 (W.D. Mo. 2017)(citing *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995). "The claims of the entire class need not be identical, but the class representatives must generally possess the same interest and suffer the same injury as the unnamed class members." *Id.* (citations omitted). In assessing typicality, courts consider whether the named plaintiffs' claim "arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). Finally, "[t]ypicality will not be destroyed unless a class representative is subject to a unique defense that threatens to play a major role in the litigation." *Cromeans*, 303 F.R.D. at 552.

The typicality requirement is satisfied here because the named Plaintiffs assert the same claims individually that they assert on behalf of the Class. Plaintiffs intend to prove that CVS was required to pay for pre- and post-shift time. This applies equally across the board. Moreover, the class representatives are not subject to a unique defense that could destroy typicality. Thus, Plaintiffs' claims are indistinguishable from those of the Class and typicality is satisfied.

### d. Plaintiffs and Their Counsel Will Adequately Represent the Class.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This requirement "serves to uncover conflicts of interest between named

20

parties and the class they seek to represent." *Amchem*, 521 U.S. at 625 (citation omitted). The focus is on whether (1) the class representatives have common interests with class members, and (2) the class representatives will vigorously prosecute the interests of the other class members through qualified counsel. *Paxton v. Union Nat. Bank*, 688 F.2d 552, 562-63 (8th Cir. 1982).

Here, Plaintiffs have no interest that is antagonistic to, or conflicting with, the interests of the Class. To the contrary, Plaintiffs' interests are coextensive of those of the proposed Class members in establishing liability and damages. Further, Plaintiffs have retained qualified attorneys who are experienced in class action and wage and hour litigation. Plaintiffs' counsel has prosecuted numerous wage and hour and class action lawsuits on behalf of thousands of individuals. Moreover, the class representatives and class counsel have demonstrated their service to the class over the past five years of prosecuting the classes' interests and not their own. Thus, Plaintiffs satisfy the adequacy requirement of Rule 23(a)(4).

### 2. The Class Satisfies the Requirements of Rule 23(b)(3).

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Plaintiffs' proposed Class satisfies both the "predominance" and "superiority" requirements of Rule 23(b)(3).

### a. Questions of Law or Fact Common to All Class Members Predominate.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. It does not require that each element of the plaintiffs' claims be susceptible to class-wide proof. *Amgen, Inc. v. Comm. Retirement Plans & Trust Funds*, 568 U.S. 455, 469 (2013). It also does not require that the

21

common questions will be answered, "on the merits," in favor of the class. *Id.* at 459-60. Rather, when determining whether common questions predominate, the court asks whether, if the plaintiff's general allegations are true, common evidence could suffice to make out a prima facie case for the class. *See Blades v. Monsanto Co.*, 400 F.3d 562, 566-67 (8th Cir. 2005). And, importantly, when there are issues common to the class that predominate, "the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Day v. Celadon Trucking Servs., Inc.*, 827 F. 3d 817, 833 (8th Cir. 2016) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)).

In evaluating predominance, courts are mindful that "[p]redominance is a qualitative rather than a quantitative concept. It is not determined simply by counting noses: that is, determining whether there are more common issues or more individual issues, regardless of relative importance." *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014) (internal citation omitted).

Common questions predominate in establishing Defendants' liability under Plaintiffs' claims. To prevail, Plaintiffs must establish that the pre- and post- shift activities at issue are compensable and not *de minimis*. The answer to these questions will predominate over all other questions in the case. It is unlikely that any individual issues would remain because Plaintiffs could prove the amount of unworked time based on a reasonable average estimate of unworked time. But even if any individual questions were to remain they would be outweighed by the common questions at issue.

22

### b. Class Treatment is the Superior Method for Adjudicating These Claims.

In addition to predominance, Rule 23(b)(3) requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." The superiority analysis "requires the Court to determine whether the class action is manageable, taking into consideration choice of law determinations, notice to class members, etc." *Cope*, 319 F.R.D. at 557. However, "dismissal for management reasons is never favored….[and] lack of manageability justifies denial of certification 'only where the attention and resources which would have to be devoted strictly to administrative matters will overwhelm any relief ultimately accruing to the plaintiff class.'" *Barfield v. Sho-Me Power Elec. Co-op.*, No. 11-CV-04321-NKL, 2013 WL 3872181, at *15 (W.D. Mo. July 25, 2013) (citations omitted).[5]

Consolidating all claims into a single litigation is in the best interest of the Class members and the court system. Indeed, it would be judicially inefficient for these claims to be spread among multiple jurisdictions given that the same legal theories and evidence will be used by all Class members. And prosecuting the exact same claims across multiple jurisdictions runs the risk of creating inconsistent rulings on identical claims. It is, therefore, desirable to consolidate those claims in this Court. Class counsel will be able to present this case on a class-wide basis as efficiently as on an individual basis and in less time than prosecuting multiple claims in different jurisdictions.

Plaintiffs have provided evidence that, among other things:

- The sworn deposition and affidavit testimony of hourly, non-exempt telephone-dedicated call center employees from across the country demonstrating they (1) performed the ***same duties***, (2) often worked at least 40 hours a week, (3) were not paid overtime for required pre-shift work due

---

[5] *See also Mullins v. Direct Digital, LLC*, 795 F.3d 654, 663 (7th Cir. 2015) (noting it is a "well-settled presumption" that "courts should not refuse to certify a class merely on the basis of manageability concerns") (citing cases).

23

to Defendants' alleged unlawful pre-shift pay policy and practice; and

- Defendants' ***own documents*** corroborating that CCRs across the country are subject to the same unlawful pre-shift pay policy and practice that required them to perform unpaid pre-shift work without providing overtime compensation despite CCRs regularly working over 40 hours per week.

Because all class members were subject to the alleged policy of not paying for pre- and post-shift time, the class is cohesive and should be readily settled for settlement purposes.

### iv. The Requested Service Awards are reasonable.

Plaintiffs seek a service payment for the Named Plaintiffs, class representatives and the class members who provided written discovery responses and/or deposition testimony. The total requested service award constitutes less than 1% of the total settlement funding the following amounts: Named Plaintiff Timothy Woods, $27,500.00; Named Plaintiff Kimberly Gibson; $17,500.00; Class Representatives Marta Hulseberg, Ramon Ogden, Anita Johnson, and Alyssa Viau: $10,000 per person; plaintiffs Marteen Manuel, Alysia Sanders, Anita Richardson, Cynthia Dimond and Jeffrey Marcotte,[6] and Susan Siegel, who engaged in discovery: $5,000 per person; Settlement Class Representatives Veronica Brown, Lacy Webster, Kathy O'Connell, Leona Gist, Maria Shelton, Ricardo Garcia and Tanya Cook $1,000 per person.

Through the course of almost five years they participated in countless meetings with Plaintiffs' counsel, were deposed, attended mediations, and Mr. Woods even passed up a generous offer of judgment in service of the rest of the class.

Additionally, the Named Plaintiffs and class representatives took a risk by not only joining the litigation, but by putting their names on it. By lending their names to employment litigation

---

[6] Ms. Dimond and Mr. Marcotte participated in in written discovery and were each deposed but were inadvertently omitted from the service award section of the Settlement Agreement. The Parties agree they should have been included and the Parties request that their service award be approved.

24

they have risked reputation damage to current and future employers. They will forever be subject to background checks on employment applications, and there is risk that if an employer learns of their previous litigation, it may be less likely to hire them.[7] Moreover, for the two largest service awards, those sought for Mr. Woods and Ms. Gibson, each has agreed to a general release of any and all claims whatsoever against CVS. In light of the small percentage of the settlement fund that the monies represent, Claimants respectfully request that the incentive award be approved.

Courts recognize that the risk, time, and dedication that an individual devotes to a lawsuit that inures to the common benefit of others warrants a service award above-and-beyond what other settling plaintiffs receive. *See Husein v. Bravo Brio Restaurant Group*, No. 16-cv-00435-DW, Doc. 48 (W.D. Mo. December 13, 2017) (approving service award to two named plaintiff and early opt in of $17,500 each)*; Hermsen v. City of Kansas City,* No. 11-cv-753-BP, ECF Doc. 115 (W.D. Mo. Sept. 22, 2014) (approving service award to named plaintiff in the amount of $42,282.12, representing 3% of the common fund); *Tussey v. ABB, Inc.*, No. 06-04305-CV-C-NKL, 2012 WL 5386033 (W.D. Mo. Nov. 2, 2012) (approving $25,000 service awards for three class representatives); *Wolfert v. UnitedHealth Group, Inc.,* No. 4:08CV01643(TIA), at *4 (E.D. Mo. Aug. 21, 2009) (approving incentive award of $30,000; *Matheson v. T-Bone Rest.*, LLC, 2011 WL 6268216, at *9 (S.D.N.Y. Dec. 13, 2011) (approving $45,000 service award to named plaintiff in tip pool/OT case settlement after two-and-a-half years of litigation); *Mentor v. Imperial Parking Sys., Inc.*, 2010 WL 5129068, at *5 (S.D.N.Y. Dec. 15, 2010) (approving $40,000 service award to named plaintiff in FLSA settlement after five years of litigation); *Willix v. Healthfirst, Inc.*, 2011

---

[7] *Bellinghausen v. Tractor Supply Co.,* 306 F.R.D. 245, 266–67 (N.D. Cal. 2015) ("Incentive awards are particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant 'reputational risk' by bringing suit against their former employers.").

WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving $30,000 service award to named plaintiff in FLSA settlement after three years of litigation).

Given the importance of the assistance provided by the Class Representatives and the Class Deponents, these Service Awards are reasonable.

### IV. Approval of the FLSA Collective Action Settlement.

The standard for court approval is straightforward under the FLSA: a district court should approve a fair and reasonable settlement if it was reached as a result of contested litigation to resolve a bona fide dispute under the FLSA. *Garcia v. Triumph Foods*, Case No. 11-6046-CV-SJ-ODS (W.D. Mo. July 12, 2012) (citing *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982)). First, the court must be satisfied that the settlement was the product of "contested litigation." *Id.* (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1353). Second, the court must inquire as to whether the settlement involves a fair and reasonable resolution of a bona fide dispute between the Parties under the FLSA. *Id.* Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in an arm's length settlement as *indicia* of fairness. *Id.* If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.* Plaintiffs respectfully submit that this Court should conclude that the parties' settlement is a reasonable resolution of a *bona fide* dispute in contested litigation.

This settlement was the product of arm's length negotiations by experienced counsel after nearly five years of litigation and provides meaningful, significant, monetary relief to all party Claimants. It also eliminates the very real and inherent risks both sides would bear if this complex litigation continued to resolution on the merits. Under these circumstances, a presumption of fairness should attach to the proposed settlement. *See Lynn's Food Stores*, 679 F.2d at 1354 (courts

rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness); *see also In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery") (citations omitted).

The litigation was contested and settled after two mediations and significant post-mediation negotiations. Only after years of discovery, data analysis and shuttle diplomacy via the mediation process, were the parties able to reach an accord. Serious questions of fact and law existed that placed the ultimate outcome of the litigation in doubt.

The settlement offers a significant payment to the Plaintiffs and participating class members now. Participating class members will receive meaningful awards after costs and attorneys' fees depending on the amount of time worked in a covered position. Further, if the settlement is not approved, any recovery through litigation may not occur until after years of litigation and appeals. Or, such recovery may not occur at all after trial and appeal. For these reasons, settlement approval now should be highly favored. *See, e.g., In re BankAmerica*, 210 F.R.D. at 701 ("As courts have recognized, when considering settlement agreements they should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush."); *see also Lynn's Food Stores*, 679 F.2d at 1354 (public policy encourages settlement of FLSA litigation); *Little Rock School District v. Pulaski Cnty. Special School District No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990) ("A strong public policy favors [settlement]

agreements, and courts should approach them with a presumption in their favor.").

## V. The Court Should Enjoin Other Suits Prior to Final Approval

To facilitate the settlement process described herein, the Parties respectfully request that the Court exercise its authority pursuant to 28 U.S.C. § 1651(a) ("Writs") to enter an injunction enjoining Settlement Class members from initiating or proceeding with claims that overlap with this case. The requested injunction would remain in effect through the date of Final Approval and would not apply to individuals who choose to opt out of the case. Courts may issue such injunctions to facilitate orderly resolution in complex class actions. *See, e.g. In re Diet Drugs,* 282 F.3d 220, 225-29, 233-239 (3d Cir. 2002) (affirming a federal injunction against a state court's order that all members of a state class action were to be partially opted out of a parallel federal nationwide class action in which a settlement agreement had been approved by the court); *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 (7th Cir. 1996) (holding that a federal injunction is proper "[w]here a litigant's success in a parallel state court action would make a nullity of the district court's [discovery] ruling, and render ineffective its efforts effectively to manage the complex litigation at hand"). Here, such an injunction will facilitate the orderly administration of the proffered settlement, and enable Class Members to participate, raise any objections, or opt-out of the settlement in this Court, rather than in competing litigation in another venue.

## CONCLUSION

The settlement presented is an immediate, real, substantial, and fair settlement. Claimants, therefore, respectfully request that the Court approve the settlement as provided in Exhibit 1, in whole and without delay.

28

Respectfully submitted,

**WILLIAMS DIRKS DAMERON LLC**

/s/ Eric L. Dirks
Eric L. Dirks   MO Bar No. 54921
1100 Main Street, Suite 2600
Kansas City, MO  64105
(o) 816-945-7110
(f) 816-945-7118
dirks@williamsdirks.com

**THE HODGSON LAW FIRM, LLC**
Michael Hodgson   MO Bar No. 63677
3609 SW Pryor Road
Lee's Summit, MO 64082
(o) 816-600-0117
(f) 816-600-0137
mike@thehodgsonlawfirm.com

**J. DEREK BRAZIEL**
Texas Bar No. 00793380
**J. FORESTER**
Texas Bar No. 24087532
**LEE & BRAZIEL, L.L.P.**
1801 N. Lamar Street, Suite 325
Dallas, Texas 75202
(214) 749-1400 phone
(214) 749-1010 fax
www.overtimelayer.com
ADMITTED PRO HAC VICE

**JACK SIEGEL**
State Bar No. 24070621
**SIEGEL LAW GROUP PLLC**
Meadow Park Tower
10440 N. Central Expy., Suite 1040
Dallas, TX 75231
(214) 706-0834
Jack@siegellawgroup.biz
ADMITTED PRO HAC VICE

*Attorneys for Plaintiffs*

29

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of May 2019, the proceeding was filed using the Court

CM/ECF System, which gives notice to the following:

James J. Swartz, Jr. (admitted pro hac vice)
1201 West Peachtree Street NW
Suite 1100
Atlanta, GA 30309
Phone: (404) 253-6046
Facsimile: (404) 253-6060
jswartz@polsinelli.com

Brian J. Zickefoose
James Swartz, Jr.
900 W. 48th Place, Ste. 900
Kansas City, Missouri 64112-1895
Tel: (816) 753-1000
Fax: (816) 753-1536
Bzickefoose@polsinelli.com

*Attorneys for Defendants*

/s/ Eric L. Dirks
Eric L. Dirks

30