## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

**TIMOTHY WOODS & KIMBERLY GIBSON,** on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

**CAREMARK PHC, LLC, d/b/a/ CVS CAREMARK CORPORATION, CAREMARK, LLC, AND CVS PHARMACY, INC.,**

Defendants.

Case No. 4:14-cv-583-SRB

## PLAINTIFFS' UNOPPOSED MOTION FOR
## FINAL SETTLEMENT APPROVAL

Respectfully submitted,

**WILLIAMS DIRKS DAMERON LLC**

/s/ Eric L. Dirks
Eric L. Dirks   MO Bar No. 54921
1100 Main Street, Suite 2600
Kansas City, MO  64105
(o) 816-945-7110
(f) 816-945-7118
dirks@williamsdirks.com

**THE HODGSON LAW FIRM, LLC**
Michael Hodgson   MO Bar No. 63677
3609 SW Pryor Road
Lee's Summit, MO 64082
(o) 816-600-0117
(f) 816-600-0137
mike@thehodgsonlawfirm.com

***Additional Counsel Listed on Signature Page***

***Attorneys for Plaintiffs***

i

# TABLE OF CONTENTS

I.   FACTS AND PROCEDURAL HISTORY SINCE PRELIMINARY APPROVAL OF THE SETTLEMENT..................................................................................... 1

II.  QUESTION PRESENTED .................................................................................. 3

III. ARGUMENT ...................................................................................................... 3

    A.   APPROVAL OF THE OPT-OUT CLASS SETTLEMENT. ................................................ 3

      1.   The Proposed Settlement Enjoys an Initial Presumption of Fairness. ........................ 4

      2.   Analysis of the Applicable Factors Favors the Settlement. ............................... 5

        a)   The Extent of Discovery........................................................................... 6

        b)   The Stage of the Proceedings and the Complexity, Expense, and Duration of Further Litigation.................................................................................... 6

        c)   The Absence of Fraud or Collusion in the Settlement.................................. 7

        d)   The Experience and Views of Counsel....................................................... 7

        e)   The Opinions of Class Members. .............................................................. 8

        f)   The Strength of the Plaintiffs' Case. ......................................................... 12

    B.   APPROVAL OF THE FLSA CLASS SETTLEMENT. .................................................. 13

    C.   THE SETTLEMENT IS CONSISTENT WITH SETTLEMENTS IN SIMILAR CASES. ........................ 15

    D.   NOTICE PROVIDED TO MEMBERS OF THE PUTATIVE CLASS WAS PROPER. .......................... 16

    E.   THE COURT SHOULD APPROVE THE REQUESTED SERVICE AWARD. .................................. 17

IV.  PLAINTIFFS' APPLICATION FOR FEES & EXPENSES SHOULD BE APPROVED. .............................................................................................. 19

CONCLUSION ............................................................................................................ 23

Case 4:14-cv-00583-SRB   Document 271   Filed 10/31/19   Page 2 of 31

**Cases**

*Barfield v. Sho-Me Power Elec. Co. op.*, No. 11-CV-04321-NKL, 2013 WL 3872181 (W.D. Mo. July 25, 2013) .................................................................................................................. 16

*Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-cv-01413, 2008 WL 5458986 (S.D. Cal. Dec. 10, 2008) ................................................................................................................................................ 5

*Blum v. Stenso*n, 465 U.S. 886 (1984) ......................................................................... 20

*Blume v. International Services, Inc.*, 2014 WL 12799567 (E.D. Mo. Sept. 2, 2014) ................ 13

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ........................................................................ 19

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. Aug. 22, 1979) ............................................ 5

*Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991) ......................... 21

*Capsolas v. Pasta Res. Inc.*, No. 10-cv-5595, 2012 WL 4760910 (S.D.N.Y. Oct. 5, 2012) ........ 18

*Carlson v. C.H. Robinson Worldwide, Inc.*, 2006 WL 2671105 (D. Minn. Sept. 18, 2006) ........ 22

*Casey v. Coventry Healthcare of Kansas, Inc.*, No. 08-00201-CV, 2012 WL 860395 (W.D. Mo. Mar. 13, 2012) ................................................................................................................... 4

*Central R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885) ........................................................... 20

*Cohn v. Nelson*, 375 F. Supp. 2d 844 (E.D. Mo. June 30, 2005) .................................................. 4

*Cooper v. Integrity Home Care, Inc.*, No. 4:16-CV-1293-DGK, 2018 WL 3468372 (W.D. Mo. July 18, 2018) ................................................................................................................... 17

*Duchene v. Michael Cetta, Inc.*, No. 06-CV-4576, 2009 WL 5841175 (S.D.N.Y. Sept. 10, 2009) ................................................................................................................................................ 19

*E.E.O.C. v. McDonnell Douglas Corp.*, 894 F. Supp. 1329 (E.D. Mo. July 24, 1995) .................. 3

*EEOC v. Fairbault Foods, Inc.*, Civ. No. 07-3976, 2008 WL 879999 (D. Minn. Mar. 28, 2008) 22

*Elliott v. Sperry Rand Corp.*, 680 F.2d 1225 (8th Cir. 1982) ......................................................... 9

*Evans & Green, LLP v. That's Great News, LLC*, 2012 WL 4888471 (W.D. Mo. Oct. 15, 2012)

.................................................................................................................................................... 16

*Flores v. Anjost Corp.*, No. 11-cv-1531, 2014 WL 321831 (S.D.N.Y. Jan. 29, 2014) ............... 18

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. Apr. 29, 2005)................................... 22

*Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998)............................................................................ 21

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) .................................................................................... 19

*Huyer v. Buckley*, 849 F.3d 395 (8th Cir. 2017) ...................................................................... 21, 23

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. Jan. 6, 2000) .... 5

*In Re Bank of America Wage and Hour Employment Practices Litigation*, No. 10-md-2138, 2013

WL 6670602 (D. Kan. Dec. 8, 2013) ....................................................................................... 15

*In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694 (E.D. Mo. July 8, 2002)................... 7, 8, 14

*In re Chambers Development Sec. Litig.*, 912 F. Supp. 822, (W.D. Pa. May 30, 1995) ............. 10

*In re Charter Communications, Inc.*, 2005 WL 4045741 (E.D. Mo. June 30, 2005)................... 23

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768 (3rd Cir.

1995)............................................................................................................................................ 4

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3rd Cir. 1998) 21

*In re St. Paul Travelers Securities Litigation*, 2006 2006 WL 1116118  (D. Minn. April 25,

2006)......................................................................................................................................... 23

*In re Syngenta AG MIR 162 Corn Litig.*, 2019 WL 1274813 (D. Kan. Mar. 20, 2019)............... 23

*In re U.S. Bancorp Litig.*, 291 F.3d 1035 (8th Cir. 2002)....................................................... 20, 21

*In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057 (8th Cir.

2013)............................................................................................................................................ 5

iv

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922 (8th Cir. 2005) ........................ 9

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, No. MDL 1559 4:03-MD-015, 2004 WL 3671053 (W.D. Mo. Apr. 20, 2004) ........................................................................................ 9

*In re Xcel Energy, Inc. Sec. Derivative & ERISA Litig.*, 364 F. Supp. 2d 980 (D. Minn. April 8, 2005) .................................................................................................................... 20, 22

*Johnston v. Comerica Mortg. Corp*, 83 F.3d 241 (8th Cir. 1996) ................................ 20

*Kirchoff v. Flynn*, 786 F. 2d 320 (7th Cir. 1986) ........................................................ 20

*Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371 (8th Cir. 1990) 4, 14

*Lynn's Food Stores, Inc. v. U.S. by and through U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982) .................................................................................................................... 13, 14

*Marshall v. Nat'l Football League*, 787 F.3d 502 (8th Cir. 2015) ............................... 4, 9

*Matheson v. T-Bone Rest., LLC*, No. 09-CV-4214, 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011) .................................................................................................................................... 19

*Mentor v. Imperial Parking Sys., Inc.*, No. 05-CV07993, 2010 WL 5129068 (S.D.N.Y. Dec. 15, 2010) ............................................................................................................................. 19

*Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*, 688 F.2d 615 (9th Cir. 1982) .................................................................................................................... 3

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) ..................................... 4, 20

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ............................................... 16

*Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198 (W.D. Mo. March 14, 2017) ................. 16

*Rawa v. Monsanto Co.*, 934 F.3d 862 (8th Cir. 2019) ................................................. 23

*Roberts v. Logo Loops, LLC*, 2016 WL 454757 (E.D. Mo. Feb. 5, 2016) ................... 13

v

*Rosenbaum v. MacAllister*, 64 F.3d 1439 (10th Cir. 1995) ........................................................ 21

*Sanderson v. Unilever Supply Chain, Inc.*, 10-CV-00775-FJG, 2011 WL 5822413 (W.D. Mo. Nov. 16, 2011)........................................................................................... 5, 6, 8, 13

*Swedish Hospital Corp v. Shalala*, 1 F.3d 1261 (D.C. Cir. Aug. 10, 1993) ................................ 21

*Trustees v. Greenough*, 105 U.S. 527 (1882) ............................................................................ 20

*Van Horn v. Trickey*, 840 F.2d 604 (8th Cir. 1988) ...................................................................... 9

*Warner Comm. Sec. Lit.*, 618 F. Supp. 735 (S.D.N.Y. Aug. 20, 1985) ........................................ 5

*Willix v. Healthfirst, Inc.*, No. 07-CV-1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) .......... 18

## Rules

Fed. R. Civ. P. 23(e)(2) ................................................................................................................ 3

FRCP 23(e) ................................................................................................................................... 3

Rule 23 ................................................................................................................................... 4, 5

## Other Authorities

4 Newberg on Class Actions § 11:48 (4th ed. 2002) .................................................................... 9

4 Newberg on Class Actions § 11.41 ............................................................................................ 4

7B Fed. Prac. & Proc. Civ. § 1797.5 (3rd. ed.) ............................................................................ 4

Newberg on Class Actions § 4:2 (5th ed.) ................................................................................... 4

Case 4:14-cv-00583-SRB   Document 271   Filed 10/31/19   Page 6 of 31

On May 31, 2019, the Court issued its Order Granting Preliminary Approval of the Settlement finding that the Court was likely to approve the settlement. (Doc. 265) ("the Court will likely be able to approve the Settlement Agreement under Rule 23(e)(2)"). By that Order, the Court granted class certification for the purposes of settlement, appointed Named Plaintiffs Timothy Woods and Kimberly Gibson ("Named Plaintiffs") as the class representatives, appointed undersigned counsel as Class Counsel, and directed the parties to proceed with settlement administration, including mailing and emailing notice to the Class, according to the terms of the Settlement and the Order.

Notice was sent to all class members via mail, and, additionally, via email for individuals whose email was known. *See* Declaration of Jeff Mitchell (attached as Exhibit 1) (setting out notice and claims process overseen by the Claims Administrator). The Settlement has been well received by the class:

- 12,034 have chosen to affirmatively participate in the Settlement;

- Numerous class members have informally expressed positive remarks to counsel;

- Only 13 individuals have chosen to exclude themselves from the case; and

- No formal objections were filed and only one informal objection was sent to Class Counsel.

Under these circumstances, where the settlement has been well-received and the Court already indicated that it was likely to approve the Settlement, the Court should readily grant final approval of the Settlement.

## I.    Facts and Procedural History Since Preliminary Approval of the Settlement.

After preliminary approval of the Settlement, the Settlement Administrator sent notice via first class mail and also emailed notice to class members for whom an email address was known. *See* Exhibit 1 (Mitchell Declaration). In addition, the Settlement Administrator skip traced

1

addresses for all class members, and for individuals whose addresses were undeliverable, the Settlement Administrator performed further investigations to resend notice. *Id.*

After preliminary approval, CVS provided an updated class list to the Settlement Administrator and an additional 2,562 members of the Class were identified and sent class notice. Pursuant to the terms of the Settlement Agreement, the Settlement has been increased from $15,250,000 to $16,669,155.84 to include these individuals under the Settlement.

After this addition to the settlement funds, the main terms of the agreement are as follows[1]:

- The Gross Settlement Fund has been increased to include claims of individuals who were not previously identified as class members to the amount of $16,669,155.84. This payment includes the settlement allocations available to Class Members, Named Plaintiffs, Settling Plaintiffs, and Existing Opt-Ins, including any interest, liquidated, punitive, and/or multiple damages; taxes; payroll taxes, including Employer Payroll Taxes; Service Awards; the Allocation Correction Set-Aside; Attorney's Fees and Lawsuit Costs; and Administrative Costs.

- Detailed notices were mailed and emailed to class members[2] after preliminary approval of Settlement apprising class members of, among other things:
    - Their individual settlement amounts,
    - Their right to opt out of the settlement if they so wished, and
    - The procedure for claiming monies.

- Attorneys' fees will comprise one-third of the original fund of $15,250,000 and 30% of the increased settlement amount. Although additional funds have been recovered, Plaintiffs' Counsel do not request additional attorney's fees for the increased settlement amount. No class member has objected to this award.

- 1% of the settlement to be paid as service awards. No class member has objected to this award.

- Costs of $73,817.53. No class member has objected to these costs.

At the end of the notice period, a total of over 12,000 individuals have opted into the case

---

[1] The Settlement Agreement is Attached as Exhibit 2.

[2] *See* Generally Exhibit 1 (Mitchell Declaration).

and have claimed approximately 68 percent of the available funds.

No Class Member has objected to the overall terms of the Settlement, the service awards, or Class Counsels' fees and costs. One informal objection letter was sent to Class Counsel by one class member, which complains about that individual's amount of recovery and is flawed for several reasons as discussed below in Section 3(e).

## II.     Question Presented

Should the Court grant Plaintiffs' motion to approve the settlement of this case when the Settlement has been well received by the class; is fair, reasonable and adequate; provides an immediate, significant benefit to the class members who affirmatively chose to participate; and ends contested litigation prior to trial?

## III.    Argument

### A.      Approval of the Opt-Out Class Settlement.

FRCP 23(e) requires a Court to determine whether a final settlement binding upon class members is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, the Court considers "the settlement, taken as a whole," rather than its component parts. *E.E.O.C. v. McDonnell Douglas Corp.*, 894 F. Supp. 1329, 1333 (E.D. Mo. July 24, 1995) ("it has been recognized that 'the Court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned'") (citing *Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

3

Approval of a Rule 23 class settlement involves a two-step process. Manual for Complex Litigation, § 21.632 (4th ed. 2004); § 4:2. Overview of Class Actions, Newberg on Class Actions § 4:2 (5th ed.). The first step was completed when the Court granted preliminary approval of the settlement and ordered notice to be sent to the class. In the second and final step, the Court takes into consideration the notice provided to class members and any objections raised. 7B Fed. Prac. & Proc. Civ. § 1797.5 (3rd. ed.). "Ultimately, the court must examine whether the interests of the class are better served by settlement than by further litigation." *Casey v. Coventry Healthcare of Kansas, Inc.*, No. 08-00201-CV, 2012 WL 860395, at *1 (W.D. Mo. Mar. 13, 2012). Having provided notice pursuant to the approved plan and receiving only one informal complaint out of approximately 20,000 class members (constituting only 0.005% of the class), the Parties request that the Court grant final approval of the Rule 23 settlement.

### 1. The Proposed Settlement Enjoys an Initial Presumption of Fairness.

"The law strongly favors settlements. Courts should hospitably receive them." *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990). *See also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("[A] strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."). This preference is particularly strong "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. June 30, 2005) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 784 (3rd Cir. 1995)).

Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 Newberg on Class Actions § 11.41. *See also Marshall v. Nat'l Football League*, 787 F.3d 502, 508

(8th Cir. 2015) ("A settlement agreement is 'presumptively valid.'") (quoting *In re Uponor, Inc.,*
*F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013)). After the
parties' arm's length negotiations, "it is not for the Court to substitute its judgment as to a proper
settlement for that of such competent counsel." *In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164, 173-74 (S.D.N.Y. Jan. 6, 2000) (quoting *In re Warner Comm. Sec. Lit.*, 618
F. Supp. 735, 746 (S.D.N.Y. Aug. 20, 1985)); *Sanderson v. Unilever Supply Chain, Inc.*, 10-CV-
00775-FJG, 2011 WL 5822413, at *3 (W.D. Mo. Nov. 16, 2011) (crediting the judgment of class
counsel experienced in FLSA cases that settlement was fair, reasonable, and adequate); *Bellows v.*
*NCO Fin. Sys., Inc.*, No. 3:07-cv-01413, 2008 WL 5458986, *8 (S.D. Cal. Dec. 10, 2008) ("it is
the considered judgment of experienced counsel that this settlement is a fair, reasonable, and
adequate settlement of the litigation, which should be given great weight"); *Boyd v. Bechtel Corp.*,
485 F. Supp. 610, 622 (N.D. Cal. Aug. 22, 1979) ("[t]he recommendations of plaintiffs' counsel
should be given a presumption of reasonableness"). Here, the Settlement was negotiated by
counsel at arm's length and is fair, reasonable, and adequate, and it is in line with, and indeed
above, recoveries in analogous wage and hour cases involving call centers.

### 2. Analysis of the Applicable Factors Favors the Settlement.

To determine whether a proposed class settlement is fair, reasonable, and adequate, courts
regularly consider the same factors for Rule 23 and FLSA class settlements. *Sanderson*, 2011 WL
5822413, at *3. "Those factors are the following: (1) the extent of discovery that has taken place;
(2) the stage of the proceedings, including the complexity, expense, and likely duration of the
litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who
have represented the plaintiffs; (5) the opinions of class counsel and class members after receiving
notice of the settlement whether expressed directly or through failure to object; and (6) the

probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery." *Id.* These factors weigh in favor of finding the proposed Settlement fair, reasonable, and adequate in this case.

### a) The Extent of Discovery.

The nature and scope of pre-settlement discovery favors final approval of the Settlement. The Parties have been fully litigating this matter for five years, and throughout this litigation, the Parties have performed the necessary legal, documentary, and investigative work. Moreover, the Parties undertook substantial investigative efforts and discovery of class information. The Parties propounded and responded to numerous interrogatories and requests for production of documents. The Parties took and defended numerous depositions. The Parties exchanged voluminous information, deposition testimony, data, and documents necessary to fully and fairly evaluate the Class Members' claims, including employment dates and duties, compensation data, sample login data, weeks worked, and hourly pay of Class Members during the relevant time period. The Parties and their counsel have investigated and evaluated the facts and law relating to the claims asserted in the litigation. Based on the significant discovery, in addition to expert analyses and legal arguments, the Parties were able evaluate the reasonable value of class members' claims and negotiate a fair settlement.

### b) The Stage of the Proceedings and the Complexity, Expense, and Duration of Further Litigation.

This case is complex and carries significant risks for the parties as to both legal and factual issues. Litigating the case to trial would likely consume great time and expense. Trial would likely entail bringing together dozens of witnesses for several days of testimony, at great expense to the parties and inconvenience to the witnesses.

6

As to complexity, if the parties had not reached an accord, this matter would have proceeded to multiple dispositive motions, a motion for decertification, and eventually a trial on the merits. If settlement was not reached and if the Court was inclined to decertify the class or grant summary judgment to Defendants, the class members would recover nothing. Further, even if the case were to proceed to trial, substantial legal questions affecting any potential recovery by Plaintiffs and class members remain to be resolved including the actual injury and entitlement of each member of the class to recover and the measures of damages under the FLSA and state law. The uncertain disposition of the litigation, as well as these unresolved questions, creates substantial complexity and concordant risk for Plaintiffs and the class, and thus weighs in favor of the recovery guaranteed by the proposed Settlement.

### c) The Absence of Fraud or Collusion in the Settlement.

There is no fraud or collusion in the Settlement. Indeed, this litigation has been diligently prosecuted and defended. After more than four years of contentious litigation, the Parties attended mediation in Atlanta, Georgia on December 21, 2018, with Hunter Hughes, a nationally-renowned mediator in complex litigation, including wage and hour class action litigation. Although a settlement was not reached, the Parties were able to significantly narrow the gaps between their respective positions and subsequently reached an agreement through a series of follow-up negotiations. The mediation with Mr. Hughes further precluded any possibility of improper motive or circumstances in the filing or prosecution of the suit. All proceedings and negotiations have taken place at arm's length.

### d) The Experience and Views of Counsel.

A court evaluating a proposed settlement "should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation. *In re BankAmerica Corp.*

*Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. July 8, 2002) (quoting Fed. Judicial Ctr., Manual for Complex Litig. § 30.42 at 240 (3d. ed.1997)). A presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *Id.*

Although the Court is not bound by counsel's opinion, their opinion nonetheless carries weight in assessing a settlement. *Sanderson*, 2011 WL 5822413, at *3–4 (crediting experienced class counsel's belief that the settlement was fair, reasonable, and adequate). Here, the class had the benefit of attorneys who are highly experienced in complex wage and hour litigation as well as class actions, familiar with the facts and law in the case, and who have negotiated many class and collective action settlements. Likewise, Defendants retained experienced counsel that could successfully navigate complex litigation in the wage and hour context.

The litigation was at all times hard-fought. The negotiations in this case were also hard-fought and at arm's length. In Plaintiffs' Counsel's view, the Settlement provides substantial benefits to the class, especially when one considers, among other things, the attendant risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings. Further, in Plaintiffs' Counsel's experience, when compared with similar litigation, the relief to this class is substantial.

### e)    The Opinions of Class Members.

The opinions of class members, expressed through claims, objections, opt-outs, and silence, represent the most important "new" information available for final, rather than preliminary, settlement. The reaction of the Class has been overwhelmingly supportive of the Settlement.  As noted above, of the approximately 20,000 class members receiving notice of the Settlement, only one asserted an informal complaint about the Settlement amount and only 13

8

excluded themselves from the case; while in comparison more than 12,000 individuals opted in – and they are looking forward to receiving settlement checks as soon as possible.

Final approval may be warranted even where a substantial number of class members object to or opt-out of a settlement. "Courts often consider the number of objectors in determining whether the settlement is fair to the entire class." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, No. MDL 1559 4:03-MD-015, 2004 WL 3671053, at *13 (W.D. Mo. Apr. 20, 2004). "A court may consider whether the number of objectors is large when compared to the class as a whole." *Id.* (citing 4 Newberg on Class Actions § 11:48 (4th ed. 2002)). *See also Marshall*, 787 F.3d at 513–14 (affirming final settlement approval over the objections of six of twenty-three class representatives where less than ten percent of class members had in fact opted out); *Van Horn v. Trickey*, 840 F.2d 604, 606 (8th Cir. 1988) (affirming settlement approval over the objections of nearly half of the class members); *Elliott v. Sperry Rand Corp.*, 680 F.2d 1225, 1226 (8th Cir. 1982) (affirming settlement approval over the written objections of 790 of approximately 3,000 class members, including both named plaintiffs, noting that "[t]he vast majority approved the settlement.").

But where, as here, over 12,000 members have chosen to affirmatively participate while only one class member has informally objected, final approval is eminently appropriate. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, No. MDL 1559 4:03-MD-015, 2004 WL 3671053, at *17-18 (approving final settlement agreement where 0.0007% of the class objected to the settlement). Indeed, "[t]he district court has a duty to the silent majority as well as the vocal minority," and the silence of notified class members is construed as support. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005). The fact that no formal objections were received and only one informal objection was received weighs heavily, if not

entirely, in favor of final settlement approval. Further, even if this Court were to consider the informal objection despite its improper filing, the Court should still find in favor of the final settlement approval as only one class member has informally objected out of a class size of over 20,000. *See In re Chambers Development Sec. Litig.*, 912 F. Supp. 822, (W.D. Pa. May 30, 1995) (the court approved a settlement where "there were no objections filed in the manner described in the notices to the class . . . however, one objector did send a handwritten letter to the Court").

The single informal objection[3] is without merit for at least five important reasons. First, the informal objection was premised on a belief that the informal objector should have received more money. In fact, she seeks a payment of approximately ***one year's salary*** in this case that centers on only minutes per day of unpaid time. The objector, without support, argues this amount is appropriate because she should be compensated for four hours per week of unpaid time. However, the Parties conducted numerous depositions, reviewed data logs and time entries, and Plaintiffs' counsel questioned hundreds of class members to determine what amount of time that Defendants' employees spent booting up their computer systems and loading applications. That data showed that, at maximum, Defendants' unpaid time for turning on computer systems was *significantly* less than the four hours per week the informal objector relies on in her letter. Therefore, the informal objector's claim that the settlement apportionment is not enough is highly overstated.

Second, the informal objector had the opportunity to work with Plaintiffs' counsel to provide information about her claim during the litigation. Indeed, when Plaintiffs' counsel reached out to her to provide input about the facts of her claim and her personal experience, she did not

---

[3] The letter is attached as Exhibit 3. The informal objector has stated she does not intend to appear at the fairness hearing.

respond (unlike the hundreds of class members who did respond and upon whose information Class Counsel relied for the damages modeling in this case).

Third, the informal objector's claims would be time barred but for the existence of this case. The applicable statute of limitations for the objector's claims is three years but she ended her employment with CVS over three years ago. Even with the tolling afforded from this case (long before she opted in to this case), the informal objector is seeking *several years of recovery that are outside of the limitations period available in this case*.

Fourth, the objector overstates her weeks worked and time spent in a covered position. For example, of the time period for which she discusses, *she seeks approximately eight months of compensation when she was on medical leave from her job*. This does not even account for the numerous weeks on which she took vacation or did not work overtime.

Fifth, only one out of over 20,000 class members has informally objected. This accounts for only 0.005% of the class. It would be unfair to all remaining class members to refuse the Settlement due to one person's position that the Parties respectfully submit is without merit.

Under circumstances like these, where there is a lone negative voice out of thousands of positive voices, the Court should overrule the informal objection. The informal objection does not attack the structure of the Settlement, does not suggest the Settlement is a result of collusion, and does not attack any of the settlement terms such that the Court could reform any procedural defect. The objection merely asks for more money. While Plaintiffs would have loved to have had a greater recovery for all class members, the Settlement is already at or above the average recovery per person in analogous cases. See section III.C. below. The amount to be paid under this

11

Settlement – for time spent booting up computers and loading applications[4] – is significant and is at, or above, market for call center cases.

### f) The Strength of the Plaintiffs' Case.

After thorough investigation of the facts and law, the Parties have gained comprehensive knowledge of Plaintiffs' claims and Defendants' defenses. Consequently, the Parties have sufficient evidence to make an informed assessment of the merits of their positions. Based on their knowledge of the case and applicable law, as well as their experience in similar actions, the Parties' counsel believe the Settlement is fair, reasonable, and adequate.

The Parties naturally dispute the strength of the Plaintiffs' case, and the Settlement reflects the Parties' compromise of their assessments of the worst-case and best-case scenarios, weighing the likelihood of various potential outcomes. Plaintiffs' best-case scenario is an adverse inference for the alleged spoliated logging records, class certification to remain intact, and recovery on the merits. Plaintiffs' worst-case scenario is that the class is decertified, summary judgment is granted to Defendants, Plaintiffs lose at trial, Plaintiffs recover less than requested at trial, and/or a win is overturned on appeal. The result is not assured for either side. The details of the Settlement involved extensive negotiation and compromise. This reflects the Parties' zealous representations of their respective positions on the claims and defenses, and the difficulties and risks associated with protracted litigation.

Furthermore, even if this case were to proceed to trial and Plaintiffs prevailed on the question of liability, substantial questions would remain as to the measure of damages and the entitlement of each class member to recover for alleged failure to pay for time spent booting up

---

[4] Perhaps the objector does not understand that the settlement is for booting and loading time only. Perhaps she believed that it included other types of off the clock work to which she believes she is entitled to damages. But since she declined to participate in the case and because she declined Class Counsel's invitation to discuss her objection, it is unknown why she believes she is entitled to four hours of overtime for every week since 2008.

computer systems. Although Plaintiffs believe strongly in the merits of their claims, the great number of uncertainties in ultimately calculating class damages makes it difficult to predict how the Court would make an assessment and award.

On the other hand, the Settlement proposed ensures that class members will recover proportionally to their alleged injuries. Claiming Rule 23 class members will receive an award proportionate to time worked and pay received over the full duration of the applicable time period. This equitable and certain recovery is highly favorable in light of the many uncertainties still pending in the litigation and weighs in favor of approving the proposed Settlement. The Parties therefore request the Court approve the Settlement.

### B. Approval of the FLSA Class Settlement.

The standard for court approval is straightforward under the FLSA: a district court should approve a fair and reasonable settlement if it was reached as a result of contested litigation to resolve a bona fide dispute under the FLSA. *Sanderson*, 2011 WL 5822413, at *3 (W.D. Mo. Nov. 16, 2011) (citation omitted). First, the court must be satisfied that the settlement was the product of "contested litigation." *Blume v. International Services, Inc.*, 2014 WL 12799567, at *2 (E.D. Mo. Sept. 2, 2014). Second, the court must inquire as to whether the settlement involves a fair and reasonable resolution of a bona fide dispute between the parties under the FLSA. *Id.* Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in an arm's length settlement as *indicia* of fairness. *Lynn's Food Stores, Inc. v. U.S. by and through U.S. Dept. of Labor*, 679 F.2d 1350, 1354 (11th Cir. 1982). If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement in order to promote the policy of encouraging settlement of litigation. *Roberts v. Logo Loops, LLC*, 2016 WL 454757, at *2 (E.D. Mo. Feb. 5, 2016). Plaintiffs respectfully submit that this Court should conclude that the Settlement

is a reasonable resolution of a *bona fide* dispute in contested litigation. The extensive docket sheet alone conclusively proves this point.

This Settlement was the product of arm's length negotiations by experienced counsel and provides meaningful and significant monetary relief. It also eliminates the very real and inherent risks both sides would bear if this complex litigation continued to resolution on the merits. Under these circumstances, a presumption of fairness should attach to the proposed Settlement. *See Lynn's Food Stores*, 679 F.2d at 1354 (courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness); *In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. July 8, 2002) ("[i]n evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery") (citations omitted).

The Settlement offers a significant payment to the Plaintiffs and participating class members. Participating class members will receive meaningful awards after costs and attorneys' fees are deducted depending on the amount of time worked in a covered position. Further, if the Settlement is not approved, any recovery through litigation may not occur until after years of litigation and appeals. Or, such recovery may not occur at all after trial and appeal. For these reasons, Settlement approval should be highly favored. *See, e.g., In re BankAmerica*, 210 F.R.D. at 701 ("As courts have recognized, when considering settlement agreements they should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation.") (citation omitted). *See Lynn's Food Stores*, 679 F.2d at 1354 (public policy

14

encourages settlement of FLSA litigation); *Little Rock School District*, 921 F.2d at 1388 ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor.").

Accordingly, Plaintiffs respectfully request that the Court approve the Settlement and order that the Plaintiffs and the Participating Class Members be paid in accordance with the terms of the Settlement Agreement.

### C. The Settlement is Consistent with Settlements in Similar Cases.

The gross per class member recovery is more than $800.00. The recovery is on par with, and indeed above, other FLSA wage and hour claims involving call center claims like the claims presented here. *See Shoots v. iQor Holdings US, Inc.*, 0:15-cv-00563 (Doc. 495) (D. Minn. April 26, 2019) (in a call center case alleging plaintiffs were not paid for time spent booting up computer systems, the court approved a settlement agreement where each opt-in class member received an average gross recovery of **$431.78**); *Hampton v. Centene Mgt. Co., LLC*, No. 1:16-cv-4693 (N.D. Ill. June 14, 2018) (Doc. 65) (court approved call center settlement with an average gross recovery per class member of **$546.39**); *In Re Bank of America Wage and Hour Employment Practices Litigation*, No. 10-md-2138, 2013 WL 6670602 (D. Kan. Dec. 8, 2013) (court approved a call center settlement with an average gross recovery per class member of **$405.56**); *Bell et al v. Affiliated Computer Services, Inc. et al*, Case No. 6:09-CV-1307 (D. Oregon Oct. 24, 2012) (Docs. 84, 87) (court approved a call center settlement with an average gross recovery per class member of **$237.91**). The Department of Labor has also directed settlements in call center cases where the average recovery per class member was much lower than the average recovery in this case. *See, July 6, 2011 Department of Labor News Release providing that a call center case settlement with

Farmer's Insurance resulted in average gross recovery of **$439.64** per class member.[5] *See also,* October 26, 2011 Department of Labor News Release providing that call center employees of Hilton Reservations Worldwide LLC will receive an average gross recovery of **$270.51** per class member.[6]

### D. Notice Provided to Members of the Putative Class was Proper.

"[T]he the mechanics of the notice process are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *Evans & Green, LLP v. That's Great News, LLC*, 2012 WL 4888471 at *4 (W.D. Mo. Oct. 15, 2012) (citation omitted). "The United States Supreme Court has stated notice must 'apprise the interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198, 211 (W.D. Mo. March 14, 2017), aff'd, 896 F.3d 900 (8th Cir. 2018) (citation omitted). "[N]otice must be the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (internal quotations and citation omitted). "What constitutes the best notice practicable under the circumstances depends on several factors, including the size of the class, whether the class members can be easily identified, and the probability that notice will reach the intended persons." *Barfield v. Sho-Me Power Elec. Co. op.*, No. 11-CV-04321-NKL, 2013 WL 3872181, at *13 (W.D. Mo. July 25, 2013) (citation omitted).

---

[5] *Los Angeles-based Farmers Insurance to Pay More than $1.5 Million in Back Wages to Nearly 3,500 Employees following US Labor Department Investigation*, U.S. Department of Labor, https://www.dol.gov/newsroom/releases/whd/whd20110706 (last visited Oct. 29, 2019).

[6] *Hilton Reservations Worldwide Employees to Receive More than $715,000 in Minimum, Overtime Back Wages Following US Labor Department Investigation*, U.S. Department of Labor, https://www.dol.gov/newsroom/releases/whd/whd20111026 (last visited Oct. 29, 2019).

Here, notice of the Settlement has been sent to eligible class members via mail by the settlement administrator, Analytics, by email, and notice was resent to individuals whose original notice was returned as undeliverable. The Notice advised eligible class members of their right to participate in the settlement, their approximate monetary recovery, and the scope of the claims released. The Notice further advises eligible class members that they may access a copy of the Settlement Agreement at the web address provided in the Notice. *See Cooper v. Integrity Home Care, Inc.*, No. 4:16-CV-1293-DGK, 2018 WL 3468372, at *7 (W.D. Mo. July 18, 2018) (court approved mail and email as methods to notify class members of litigation). The information provided in the Notice was sufficient to inform putative class members of their rights and obligations in the litigation. The Notice clearly indicated that each eligible class member had the right to opt-out of the litigation. The Notice also clearly indicated that each eligible class member had the right to opt-in if they would like to be a part of the settlement. The Notice clearly delineated the options available to class members by using bold and capitalized font and red highlighted text boxes arranged numerically to list and describe the options available to each eligible class member. All class members were advised of the specific amount they would receive under the Settlement in their claim forms.

**E.      The Court Should Approve the Requested Service Award.**

Plaintiffs seek a service payment for the Named Plaintiffs, as well as other class members described below, who provided invaluable services to the group. The entire proposed service award accounts for less than 1% of the total settlement fund. No class member has objected to the proposed service awards.

These individuals worked with Class Counsel before and throughout this litigation in pursuing these claims on behalf of class members. These Service Awards are being sought in

recognition of the efforts made to pursue the claims raised in this Litigation on behalf of the Class, including providing factual information and otherwise assisting Class Counsel with the prosecution of the litigation at various levels of participation. This service provided necessary evidence for the parties, counsel, and the Court, furthering the interests of the class as a whole.

The reason for this service payment, in addition to the general release, is to ensure that those individuals who chose to participate and provided invaluable information about Defendants and its policies are compensated for the risk that they undertook in bringing this action. But for their actions, Defendants would have retained the benefit of its alleged failure to fully pay for time spent booting up computer systems. Numerous individuals responded to discovery and were deposed. Tim Woods, for example, even attended two mediations (one out of town) and multiple hearings. Additionally, these individuals took a risk by joining the litigation in the first place. The Named Plaintiffs particularly faced risks when joining the litigation because they risked retaliation for participation in the wage claims. Further, the Named Plaintiffs will forever be subject to background checks on employment applications, and there is risk that if an employer learns of their previous litigation, it may be less likely to hire them. In light of the small percentage of the settlement fund that the monies represent, Plaintiffs respectfully request that the service awards be approved.

Courts recognize that the risk, time, and dedication that an individual devotes to a lawsuit that aids the common benefit of others warrants a service award above-and-beyond what the typical class member is receiving. *See Wolfert v. UnitedHealth Group, Inc.,* No. 4:08-CV-01643 (E.D. Mo. Aug. 21, 2009) (Doc. 38) (approving a service award of $30,000); *Flores v. Anjost Corp.*, No. 11-cv-1531, 2014 WL 321831, at *9 (S.D.N.Y. Jan. 29, 2014) (approving $25,000 service awards for five named plaintiffs in FLSA settlement after three years of litigation); *Capsolas v. Pasta Res.*

18

*Inc.*, No. 10-cv-5595, 2012 WL 4760910, at \*9 (S.D.N.Y. Oct. 5, 2012) (approving $20,000 service award for named plaintiff in tip credit case settlement after two years of litigation); *Willix v. Healthfirst, Inc.*, No. 07-CV-1143, 2011 WL 754862, at \*7 (E.D.N.Y. Feb. 18, 2011) (approving $30,000 service award to named plaintiff in FLSA settlement after three years of litigation); *Matheson v. T-Bone Rest., LLC*, No. 09-CV-4214, 2011 WL 6268216, at \*9 (S.D.N.Y. Dec. 13, 2011) (approving $45,000 service award to named plaintiff in tip pool/OT case settlement after two and a half years of litigation); *Mentor v. Imperial Parking Sys., Inc.*, No. 05-CV07993, 2010 WL 5129068, at \*5 (S.D.N.Y. Dec. 15, 2010) (approving $40,000 service award to named plaintiff in FLSA settlement after five years of litigation); *Duchene v. Michael Cetta, Inc.*, No. 06-CV-4576, 2009 WL 5841175, at \*3 (S.D.N.Y. Sept. 10, 2009) (approving $25,000 service award to named plaintiff in tip pool case settlement after three years of litigation).

Accordingly, Plaintiffs' request falls within a fair range of service awards.

## IV. Plaintiffs' Application for Fees & Expenses Should be Approved.

As part of the preliminary approval motion, Plaintiffs requested, and Defendants did not oppose, attorney's fees in the amount of one-third of the Gross Settlement Fund in addition to reasonable and necessary expenses in the amount of approximately $73,817.53. These amounts were provided to the class members in the class notice and no class member has objected to the requested fees and costs. Because the size of the settlement has increased, but Class Counsel has not requested an increase to their fee due to the increased settlement amount, Class Counsel's request now constitutes only 30 percent of the common fund.

The Supreme Court has expressed a preference that the parties agree to the amount of attorney's fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of

a fee."). Here, the Parties have agreed to attorney's fees up to one-third of the gross settlement amount.

The Parties in this matter have also agreed to a common fund settlement. When a settlement yields a common fund for class members, fees must be paid from the recovery. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). This common fund doctrine is firmly rooted in American case law. *See, e.g., Trustees v. Greenough,* 105 U.S. 527 (1882); *Central R. & Banking Co. v. Pettus,* 113 U.S. 116 (1885); *Blum v. Stenso*n, 465 U.S. 886, 900 n.16 (1984). "In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also 'well-established.'" *In re Xcel Energy, Inc. Sec. Derivative & ERISA Litig.,* 364 F. Supp. 2d 980, 991 (D. Minn. April 8, 2005). Indeed*,* courts in this Circuit routinely approve and apply the "percentage-of-the-fund" approach in awarding attorneys' fees in common fund cases. *See, e.g., Johnston v. Comerica Mortg. Corp,* 83 F.3d 241, 245-47 (8th Cir. 1996) (approving the percentage method as one method of awarding fees); *Petrovic v. AMOCO Oil Co.,* 200 F.3d 1140, 1157 (8th Cir. 1999) (same); *In re U.S. Bancorp Litig.,* 291 F.3d 1035, 1038 (8th Cir. 2002) (same); *In re Xcel Energy,* 364 F. Supp. 2d at 993 (same).

Compensating counsel in common fund cases on a percentage basis makes good sense. First, it is customary for contingent fee attorneys to be compensated on a percentage-of-the-recovery method. Second, this fee arrangement rewards efficiency and provides Plaintiffs' counsel with a strong incentive to effectuate the maximum possible recovery under the circumstances. *See In re Xcel Energy,* 364 F. Supp. 2d at 993, 996; *Kirchoff v. Flynn,* 786 F. 2d 320, 325-26 (7th Cir. 1986). Third, use of the percentage method decreases the burden imposed on the Court by the "lodestar" method and assures that class members do not experience undue delay in receiving their share of the settlement.

As courts, including the Eighth Circuit, have routinely recognized, using a percent of the fund approach most closely aligns the interests of the lawyers with the class, since the more that is recovered for the class, the more the attorneys stand to be paid. *See Johnston v. Comerica Mortgage Co.*, 83 F. 3d 241, 244-45 (8th Cir. 1996) (noting that the percent of benefit approach has been recommended in common fund situations). Moreover, other Circuits also express "a preference for the percentage of the fund method" in class actions. *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995). *See also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3rd Cir. 1998) ("[t]he percentage-of-recovery method is generally favored in cases involving a common fund"); *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) (the percentage of the fund is "a method of more closely aligning the lawyer's interests with those of his client by giving him a stake in a successful outcome."); *Swedish Hospital Corp v. Shalala,* 1 F.3d 1261, 1271 (D.C. Cir. Aug. 10, 1993) ("concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fee award in common fund cases" and that "a percentage of the fund approach more accurately reflects the economics of litigation practice … and most closely approximates the manner in which attorneys are compensated in the marketplace for these types of cases"); *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("the percentage of the fund approach is the better reasoned in a common fund case").

The Eighth Circuit has "frequently awarded attorney fees up to 36% in class actions." *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017). *See also In re U.S. Bancorp Litig.*, 291 F.3d at 1038 (affirming an attorney's fee award of 36% in a class action suit); *Burks v. Bi-State Development Agency of the Missouri-Illinois Metropolitan District et al*, Case No. 4:09-CV-1302 (E.D. Mo. Jan. 31, 2011) (Doc. 91, p. 3, ¶ 8 & Doc. 102, p. 4, ¶ 9) (approving 33 1/3% attorney's

21

fee award in call center wage and hour claim); *Hernandez v. Texas Capital Bank*, Case No. 07-0726-ODS, Doc. 107 (W.D. Mo. July 14, 2009) (approving 33% of fund); *Wolfert*, Case No. 4:08CV1643 (E.D. Mo. Oct. Aug. 21, 2009) (Doc. 37, p.2 & Doc. 38, p.4, ¶ 9) (approving attorney fee award of 33% of the maximum gross settlement amount in call center overtime claim); *Staton v. Cavo Communications, Inc.*, Case No. 08-0273 (E.D. Mo. Jan. 14, 2009) (order under seal approving attorneys' fees and expenses at 33%); *Hamilton, et al. v. ATX Services Inc.*, Case No: 08-0030-SOW (W.D. Mo. May 6, 2008) (order under seal approving attorneys' fees and expenses at 36%); *EEOC v. Fairbault Foods, Inc.,* Civ. No. 07-3976, 2008 WL 879999, at *4 (D. Minn. Mar. 28, 2008) (approving fee award of approximately 30% of the settlement fund); *Morak, et al. v. CitiMortgage, Inc.*, Case No. 07-1535 (E.D. Mo. Sep. 26, 2008) (order under seal approving attorneys' fees and expenses at 33%); *Perry v. National City Bank*, Order Approving Settlement, Attorneys' Fees and Service Awards, Case No. 3:05-CV-00891 (S.D. Ill. March 3, 2008) (approving requests for attorneys' fees and costs in the amount of thirty-three percent (33%) of the Settlement Fund); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 188 (W.D.N.Y. Apr. 29, 2005) (approving fee award of 38.26% of total settlement fund in FLSA collective action and Rule 23 class action case); *In re Xcel,* 364 F. Supp. 2d at 998 (collecting cases demonstrating that district courts routinely approve fee awards between 25% and 36%); *Carlson v. C.H. Robinson Worldwide, Inc.,* 2006 WL 2671105, at *8 (D. Minn. Sept. 18, 2006) (approving a fee award of $5,325,000 representing 35.5% of the of the $15,000,000 settlement fund).

Here, approximately 30 percent of the final Gross Settlement Amount (or $5,078,256.00) of the settlement fund is well within the reasonable range of attorney fee awards. Indeed, the representation agreements between Class Counsel and the Named Plaintiffs provide for fees of one-third of the recovery. Similarly, all class members have been informed that Class Counsel will

receive one-third of the fund. No class member has objected to the attorney fee request.

And if the Court were inclined to conduct a lodestar crosscheck, Class Counsel's lodestar is well within the accepted reasonable range of a multiplier because it is less than 2.5. *See* Exhibits 4-7 (setting out Class Counsels' firms' respective lodestar amounts totaling $2,121,340.50.) In conducting a lodestar crosscheck, courts in the Eighth Circuit and in the Kansas City area routinely find lodestar multipliers up to 5-6 times counsel's lodestar to be reasonable. *See Rawa v. Monsanto Co.,* 934 F.3d 862, 870 (8th Cir. 2019) (affirming attorney's fees with a 5.3 times lodestar multiplier and noting such a range does "not exceed the bounds of reasonableness"); *Huyer v. Buckley*, 849 F.3d 395, 399–400 (8th Cir. 2017) (observing lodestar multipliers of up to 5.6 times class counsel's lodestar to be in the reasonable range for a lodestar crosscheck); *In re Syngenta AG MIR 162 Corn Litig.*, 2019 WL 1274813, at *5 (D. Kan. Mar. 20, 2019) (the court approved of multipliers of 2, 2.5, and 3 and stated that "a multiplier of 3 is well within the range allowed in other cases involving large settlements"); *In re St. Paul Travelers Securities Litigation,* 2006 2006 WL 1116118, at *1  (D. Minn. April 25, 2006) (approving multiplier of 3.9); *In re Charter Communications, Inc.,* 2005 WL 4045741, at *18 (E.D. Mo. June 30, 2005) (approving multiplier of 5.6).

Finally, Plaintiffs' out-of-pocket costs, which included mediation, depositions, deposition transcripts, and other expenses necessary and reasonable to prosecute this case are $73,817.53 and should be approved.

## CONCLUSION

The Settlement presented is an immediate, real, substantial, and fair settlement. Plaintiffs, therefore, respectfully request that the Court approve the Settlement in whole and without delay.

Respectfully submitted,

23

**WILLIAMS DIRKS DAMERON LLC**

/s/ Eric L. Dirks
Eric L. Dirks   MO Bar No. 54921
1100 Main Street, Suite 2600
Kansas City, MO  64105
(o) 816-945-7110
(f) 816-945-7118
dirks@williamsdirks.com

**THE HODGSON LAW FIRM, LLC**
Michael Hodgson   MO Bar No. 63677
3609 SW Pryor Road
Lee's Summit, MO 64082
(o) 816-600-0117
(f) 816-600-0137
mike@thehodgsonlawfirm.com

**J. DEREK BRAZIEL**
Texas Bar No. 00793380
**J. FORESTER**
Texas Bar No. 24087532
**LEE & BRAZIEL, L.L.P.**
1801 N. Lamar Street, Suite 325
Dallas, Texas 75202
(214) 749-1400 phone
(214) 749-1010 fax
www.overtimelayer.com
ADMITTED PRO HAC VICE

**JACK SIEGEL**
State Bar No. 24070621
**SIEGEL LAW GROUP PLLC**
Meadow Park Tower
10440 N. Central Expy., Suite 1040
Dallas, TX 75231
(214) 706-0834
Jack@siegellawgroup.biz
ADMITTED PRO HAC VICE

*Attorneys for Plaintiffs*


**CERTIFICATE OF SERVICE**

24

I hereby certify that on this 31st day of October 2019, the proceeding was filed using the Court CM/ECF System, which gives notice to all counsel of record.

/s/ Eric L. Dirks
Eric Dirks